Argued and submitted April 23, reversed and remanded October 27, 1982

# STATE OF OREGON,
*Appellant,*

*v.*

# JOSEPH ARTHUR BERG, III et al,
*Respondents.*

## (No. 81 1412, CA A22485)

652 P2d 1272

Thomas H. Denney, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Jim Hilborn, Corvallis, argued the cause for respondent Berg. With him on the brief was Corl, Hilborn & Taylor, Corvallis.

Paul H. Kuebrich, Albany, argued the cause and filed the brief for respondent Mutschler.

No appearance for respondent Cantrell.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

## ROSSMAN, J.

Defendants Berg, Mutschler and Cantrell were charged with criminal mischief in the first degree. ORS 164.365.[1] They moved to suppress evidence seized from Mutschler's automobile during a search authorized by a warrant, primarily on the grounds that the earlier stop and arrest of defendants and the seizure of the automobile were unlawful. The state appeals from an order allowing defendants' motions. We reverse and remand.

### Facts

Between midnight and 1:00 a.m. on June 29, 1981, Albany police received four reports of vandalism, all the incidents occurring in the same area of Albany. Although witnesses' accounts varied somewhat, they indicated that those involved were two or three males traveling in a white or yellow Volkswagen Rabbit. One suspect was described as tall and thin with dark hair. They were reported to have torn down street and construction signs and vandalized telephone booths and a fire hydrant. While those incidents were being investigated by Officer Antonson, Officer Leland saw three persons in a yellow Rabbit parked at a nearby corner. Although Leland believed the automobile to be the suspects', he did not approach them but instead noted and reported the automobile's license number.

At approximately 1:00 a.m., the Albany police notified Benton County officers that the car that Leland had seen was registered to Mutschler, a Corvallis resident. About 1:40 a.m., Antonson learned that defendants' automobile, a " '75 Volkswagen Rabbit, light yellow in color" had been found parked on a street in Corvallis. Approximately 15 minutes later, he drove there and met the Benton County deputy sheriff who had discovered the automobile, one or two other police officers and defendants, who, while walking to an all-night restaurant, had been approached and detained by the deputy and the officers. Cantrell fit the description of one of the suspects given by witnesses.[2] When asked at trial whether defendants were

---

[1] Defendants were originally cited for "Theft II," an apparent reference to ORS 164.045.

[2] At the suppression hearing, Antonson described Cantrell as: "six one, one hundred fifty pounds; brown hair; blue eyes."

allowed to leave following their contact with the Benton County officers, Berg answered, "absolutely not." He explained that, although they were given no express explanation for their being held at the restaurant, they were told "wait until the big man gets here."

Using his flashlight, Antonson looked through the windows of the automobile and saw, among other things, a gray-green telephone receiver with a silver goose-neck cord, pieces of plywood that were covered with an "orange reflective road-sign type material" of the type used on construction signs, and a pair of vice grips.[3] He then checked with his dispatcher "to see if we had any further damage to any other phones" and was informed that a telephone booth at "Queen and Lincoln" in Albany had been vandalized and that the "hand set and the cord itself were missing." He asked Mutschler for permission to search the automobile. Mutschler refused. Antonson then cited all three defendants for "Theft II," took custody of the automobile and had it towed to the "Albany City Shops," where it was later searched pursuant to a warrant. He did not take defendants into custody.

Following indictment for criminal mischief in the first degree, ORS 164.365, each defendant filed a pretrial motion to suppress the evidence found in the automobile. Defendants' primary argument was, and is, that Antonson arrested and cited them and seized the automobile without a warrant and outside the territorial jurisdiction of his employment[4] and that the evidence eventually taken from the car is tainted and should be suppressed.[5] The state contended that Berg and Cantrell lacked standing to challenge the seizure and search of the car and that the seizure

---

[3] Antonson testified that a Benton County deputy had "pointed out [something] to [him] specifically" (referring to the automobile), although he did not explain just what the deputy had shown him.

[4] Corvallis, where the vehicle was seized, is situated in Benton County. Albany, where Antonson is employed and where the alleged crimes took place, is in Linn County.

[5] Defendant Berg also contended that the discovery of the evidence was the result of an overbroad search and that the search warrant was invalid and based on an affidavit containing false statements. He pursues neither theory on appeal. Furthermore, we note that the transcript of the hearing contains little or no reference to the actual search of the automobile and that neither the search warrant nor the affidavit is part of the record.

and search were lawful as to Mutschler. The trial court allowed defendants' motions. Of the three orders eventually entered by the court, only the one granting Berg's motion recites specific findings:

> "1) That the Officer Antonson of the Albany Police Department was without his jurisdictional boundaries at the time he made contact with the Defendant Berg in the City of Corvallis;

> "2) That Officer Antonson's subsequent stop, search and arrest of the Defendant Berg was unlawful. That his subsequent gathering of evidence pursuant to the stop, search and arrest was unlawful."

### Standing of Defendants Berg and Cantrell

■ ■ Whether or not Berg and Cantrell have standing to challenge the search, it is clear that Mutschler, who was the registered owner of the automobile and was present at the time of the seizure, does have such standing. *See State v. Miller,* 51 Or App 237, 239 n 1, 624 P2d 1102 *rev den* 291 Or 9 (1981). Because we hold that the seizure of the evidence was lawful as to Mutschler, under these circumstances, it was necessarily lawful as to Berg and Cantrell. Thus, we need not address the standing question.

### The Arrest and Citation of Defendants and Seizure of the Automobile

■ ■ At the time and place of defendants' arrest and citation, Antonson lacked the statutory authority to cite defendants or arrest them without a warrant in Benton County for crimes alleged to have occurred in Albany; therefore, the arrests and citations were unlawful. *State v. Huffman,* 49 Or App 823, 827-28, 621 P2d 78 (1980) (construing ORS 133.235(2)).[6] However, the validity of the

---

[6] At the time the events herein occurred and when it was construed in *State v. Huffman,* 49 Or App 823, 621 P2d 78 (1980), ORS 133.235(2) provided:

> "If the arrest is otherwise authorized under ORS 133.005 to 133.045, 133.075, 133.100 to 133.340 and 133.450 to 133.475, a peace officer who is outside the jurisdiction of his employment may make an arrest without a warrant for an offense committed within the jurisdiction where he is present. In so doing, the peace officer shall act with the same rights, privileges and immunities as are otherwise provided by law."

Or Laws 1981, ch 818, § 1 amended ORS 133.235(2) to provide that:

warrantless seizure of the automobile does not depend on whether the seizure was incident to a lawful arrest.

█ When he left Albany, Antonson (1) knew the color, make, model and license number of the automobile sought, (2) had a description of one of the three male occupants and (3) knew that street signs of a particular type, two telephone booths and a fire hydrant had been vandalized. Benton County officers had "stopped" and detained defendants and were waiting with them beside the car when Antonson reached Corvallis. ORS 131.605(5) and 131.615.[7] Defendants do not contend that their detention by the Benton County officers was unlawful. Antonson's examination of the automobile's interior and discovery of its contents took place before he arrested and cited defendants. In addition, because he was able to see the contents without any intrusion into the car, his examination was not a search, notwithstanding his use of a flashlight. *State v. Miller,* 45 Or App 407, 410, 608 P2d 595, *rev den* 289 Or 275 (1980). Thus, before he arrested and cited defendants, Antonson had information that gave him probable cause to believe the car contained evidence of the crimes he had investigated that evening in Albany. Defendants do not argue otherwise. Furthermore, the information providing probable cause for the seizure did not result from "exploitation" of the unlawful arrests; *i.e.,* the "knowledge of [the] evidence can be attributed to a source independent of the unlawful conduct." *State v. Hacker,* 51 Or App 743, 749-50, 627 P2d 11 (1981).

---

"A peace officer may arrest a person for an offense, pursuant to ORS 133.310(1), whether or not such offense was committed within the geographical area of such peace officer's employment, and the peace officer may make such arrest within the state, regardless of the situs of the offense."

ORS 133.525(2) defines "police officer" as follows:

" 'Police officer' means a sheriff, municipal policeman, member of the Oregon State Police or investigator of the Criminal Justice Division of the Department of Justice."

[7] ORS 131.605(5) provides:

"A 'stop' is a temporary restraint of a person's liberty by a peace officer lawfully present in any place."

ORS 131.615 provides, in part:

"(1) A peace officer who reasonably suspects that a person has committed a crime may stop the person and, after informing the person that he is a peace officer, make a reasonable inquiry."

■■■ The car was seized without a warrant and subsequently searched pursuant to a warrant. An automobile may be seized and searched without a warrant if there is probable cause to believe that it contains evidence of a crime and if there are exigent circumstances requiring prompt action. *State v. Quinn,* 290 Or 383, 391, 623 P2d 630 (1981). Antonson clearly had probable cause. Although the mobility of an automobile, without more, may not be sufficient to establish exigent circumstances, *State v. Fondren,* 285 Or 361, 591 P2d 1374, *cert den* 444 US 834 (1979), there are other factors in this case demonstrating the existence of such circumstances. First, defendants were arrested but were not taken into custody; after they had been cited, they were free to leave and could have left with the automobile and its contents but for the seizure. Second, defendants were aware that Antonson had seen some evidence contained in the car and under the circumstances it would have been reasonable to conclude that had they been allowed to take the car they probably would have removed and disposed of that evidence. The theory underlying the concept of exigent circumstances is one of "practical necessity." *State v. Greene,* 285 Or 337, 342, 591 P2d 1362 (1979). Under these facts, an immediate warrantless seizure of the automobile was justified to prevent the loss of evidence.

■■■ Although not well framed by defendants or the orders from which the state appeals, the question remains whether Antonson had the *authority* to seize the automobile outside the territory of his jurisdiction. At the time these events took place, there existed no express statutory restrictions on a police officer's authority to seize evidence beyond the boundaries of that territory, like those applicable to warrantless arrests. ORS 133.235(2) (amended by Or Laws 1981, ch 818, § 1).[8] The state argues that such authority existed, reasoning as follows: (1) "any police officer" may apply for and execute a warrant, ORS 133.545(2) and 133.575(1); (2) assuming that those provisions authorize application for and execution of a warrant by a police officer in an area other than his or her own jurisdiction, it follows that "any police officer" is authorized to conduct a warrantless search and seizure when all

---

[8] *See* discussion *supra* n 6.

other conditions permitting such actions without warrant are present. We need not decide in this case whether these provisions imply such an affirmative grant of authority to police officers acting *independently* and without a warrant beyond their respective jurisdictions. Nor do we reach the question whether, assuming the lack of authority, evidence seized under such circumstances must be suppressed.

Although it is certainly significant that there existed no express restrictions on extraterritorial warrantless seizures at the time Antonson took custody of Mutschler's automobile, we conclude that the seizure was authorized, because at the time and place it occurred Antonson acted, and had been acting, in the presence of and with the knowledge and cooperation of the Benton County officers. Indeed, from the moment Benton County authorities were notified that Mutschler, the registered owner of the car, was a Corvallis resident, the task of finding and detaining defendants became a cooperative effort. Under these circumstances, we cannot say that the automobile was seized without authority.

Reversed and remanded for trial.