Argued and submitted May 27, 1983, affirmed March 7, reconsideration denied April 13, petition for review denied June 5, 1984 (297 Or 272)

## STATE OF OREGON,
*Respondent,*

*v.*

## ALFREDO FREAS CALDERON,
*Appellant.*

(29293, 29292 & 29294;
CA A25985, A25986 & A25987)
(Cases consolidated)

678 P2d 1245

Stephen J. Williams, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Kay Kiner James, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were Dave Frohnmayer, Attorney General, and William F. Gary, Solicitor General, Salem.

Before Richardson, Presiding Judge, and Van Hoomissen and Newman, Judges.

RICHARDSON, P. J.

## RICHARDSON, P. J.

Defendant appeals convictions on two counts of manslaughter in the second degree and one count of third degree assault. The charges arose from a traffic accident that resulted in the death of two people and injury to a third. He asserts that the trial court erred in denying his motion to suppress evidence of the alcohol content of his blood derived from blood samples taken on the night of the accident.

We take the facts from the hearing on the motion to suppress. At approximately 7:20 p.m. on October 9, 1981, Polk County Deputy Sheriff Palacios was called to the scene of a traffic accident in Polk County, on Highway 22 between Salem and Dallas. Defendant's car had collided head-on with a car in the oncoming lane. He was injured and was taken to the emergency room at Salem Memorial Hospital, located in Marion County. Palacios spoke with a witness at the scene who said that he saw defendant's car pass him in the median turn lane at approximately 70 to 75 miles per hour before it hit the car in the oncoming lane. Palacios did not see any skid marks in the direction from which defendant's car was traveling but did see approximately 20 feet of skid marks in the direction from which the other car was coming. He saw six empty beer cans in an open bag on the seat of defendant's car. He determined that one beer can contained some drops of beer. Palacios spoke with Corporal Peters, his supervisor, who told him that he had detected a strong odor of alcohol on defendant's breath.

At around 9:45 p.m. Palacios went to defendant's hospital room. Defendant's wife was in the room with him and Palacios heard her ask defendant if he had been drinking and heard defendant tell her he had. When Palacios asked how much, defendant said he had had three beers. Palacios detected an odor on defendant at that time, but he could not tell what it was.

Dr. Garver, the attending physician, told Palacios that defendant had head injuries and was unable to consent to a blood test. He also said that he smelled no odor of alcohol on defendant. Palacios asked Garver to draw a blood sample, and a medical technician drew it. About an hour later Palacios directed that another sample be drawn.

Defendant challenges the seizure of blood samples as unconstitutional under the Oregon and federal constitutions. In support of his motion to suppress, defendant states the first question as:

> "Did a police officer have probable cause to order that two samples of blood be drawn from defendant after defendant had been admitted to a hospital with serious injuries from a fatal traffic accident?"

He summarizes his argument:

> "There was no probable cause to believe defendant had committed a crime or that the testing of his blood would yield evidence of a crime when a deputy sheriff ordered that two samples of blood be drawn from defendant."

The second question defendant poses is:

> "[W]as the police officer authorized to order the seizure of defendant's blood in a county outside of his jurisdiction."

In *State v. Heintz,* 286 Or 239, 594 P2d 385 (1979), the court considered the constitutionality of the use of evidence of blood alcohol content obtained under circumstances similar to those here. Concluding that there was probable cause to arrest and to believe that the sample would reveal alcohol and that defendant's blood sample was "seized in such a manner as would now constitute an arrest under ORS 133.005,"[1] the court found the seizure valid under the state and federal constitutions. Noting that some jurisdictions require an arrest for the validity of such a seizure and that some do not, the court explicitly held open the question of the reasonableness of a seizure of a blood sample when the person is not under arrest.

Defendant did not argue in the trial court or here that it was necessary that he be under arrest before the blood samples could be taken at the instance of the officer. Because defendant does not raise the issue left open in *Heintz,* we need not address it; we answer only defendant's contention that the officer lacked probable cause to believe that defendant was driving under the influence of intoxicants and that the blood samples would contain evidence of alcohol consumption.

---

[1] ORS 133.005(1) then stated:

" 'Arrest' means to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging him with an offense. * * *"

■■■ We conclude that there was probable cause. When he ordered the blood sample, the officer had seen the empty beer cans in defendant's car immediately following the accident, had information that Corporal Peters had detected a strong odor of alcohol on defendant's breath, had heard defendant's statement that he had been drinking, had seen the circumstances of the accident indicating that defendant had been driving recklessly and had heard an eyewitness to the accident state that defendant's car was traveling 70 to 75 miles per hour in the center turn lane. Palacios had probable cause to believe that defendant was driving under the influence of intoxicants and probable cause to believe that the blood samples would reveal evidence of alcohol consumption. *See State v. Heintz, supra.* The warrantless seizure of the blood samples was dictated by the practical necessity to seize the evidence before it dissipated. *See Schmerber v. California,* 384 US 757, 86 S Ct 1826, 16 L Ed 2d 908 (1966); *Breithaupt v. Abram,* 352 US 432, 77 S Ct 408, 1 L Ed 2d 448 (1957).

Defendant's second contention is that Palacios lacked authority to order the blood samples taken in Marion County, the location of Salem Memorial Hospital, because he was a Polk County deputy investigating a Polk County accident.[2] He contends that there is no specific statutory authority for an officer to conduct a warrantless search outside the jurisdiction of his employment. Because, at the time of this search, an officer had no authority to make an arrest in another jurisdiction (former ORS 133.235(2)), defendant argues that he, by inference, had no authority to conduct a warrantless search outside the geographic area of his employment.

At the time of the incident, ORS 133.235(2) provided:

"If the arrest is otherwise authorized under ORS 133.005 to 133.045, 133.075, 133.100 to 133.340 and 133.450 to 133.475, a peace officer who is outside the jurisdiction of his employment may make an arrest without a warrant for an offense committed within the jurisdiction where he is present.

---

[2] In the trial court defendant also argued that the medical technicians who drew the blood were not properly licensed to draw blood, did not have a certificate from the Board of Health and did not draw the samples under the direction of a physician. Defendant has abandoned that argument on appeal.

In so doing, the peace officer shall act with the same rights, privileges and immunities as are otherwise provided by law."[3]

In *State v. Huffman,* 49 Or App 823, 621 P2d 78 (1980), we held that under the statute an officer could not serve a traffic summons in another jurisdiction for an offense that took place in that officer's jurisdiction.

■■  In *State v. Berg,* 60 Or App 142, 652 P2d 1272 (1982), we considered a problem similar to that raised in this case. An Albany police officer, investigating vandalism that had taken place in Linn County, made warrantless arrests and a warrantless seizure of a car in Benton County. We stated:

> "At the time and place of defendants' arrest and citation, [the officer] lacked the statutory authority to cite defendants or arrest them without a warrant in Benton County for crimes alleged to have occurred in Albany; therefore, the arrests and citations were unlawful. *State v. Huffman,* 49 Or App 823, 827-28, 621 P2d 78 (1980) (construing ORS 133.235(2)). However, the validity of the warrantless seizure of the automobile does not depend on whether the seizure was incident to a lawful arrest." 60 Or App at 146-47. (Footnote omitted.)

Noting that under ORS 133.545(2) and 133.575(1) any officer can apply for and execute a search warrant, we stated:

> "* * * We need not decide in this case whether these provisions imply such an affirmative grant of authority to police officers acting *independently* and without a warrant beyond their respective jurisdictions. Nor do we reach the question whether, assuming the lack of authority, evidence seized under such circumstances must be suppressed.

> "Although it is certainly significant that there existed no express restrictions on extraterritorial warrantless seizures at the time [the officer] took custody of Mutschler's automobile, we conclude that the seizure was authorized, because at the time and place it occurred [the officer] acted, and had been acting, in the presence of and with the knowledge and cooperation of the Benton County officers. * * *" 60 Or App at 149. (Emphasis in original.)

---

[3] Effective November 1, 1981, ORS 133.235(2) was amended to read:

"A peace officer may arrest a person for an offense, pursuant to ORS 133.310(1), whether or not such offense was committed within the geographical area of such peace officer's employment, and the peace officer may make such arrest within the state, regardless of the situs of the offense." Or Laws 1981, ch 818, § 1.

Thus *Berg* left open the issue in this case: may an officer from one jurisdiction make a warrantless seizure in another jurisdiction when he does not have the authority to make a warrantless arrest or no local officer is present and assisting in the seizure?

Defendant points out that since *Berg* we have decided *State v. Plankinton,* 62 Or App 554, 661 P2d 1387, *rev den* 295 Or 297 (1983). In that case we concluded that the drafters of ORS 133.545(1) (providing that a search warrant may be issued only by a judge) assumed that there were geographical restrictions on the authority to issue a search warrant and held that a search warrant can be issued only by a judge within the territorial jurisdiction where the warrant is to be executed. He contends that *Plankinton* also implies a geographic limitation on searches by police officers.

There is no specific statutory authority for a peace officer to conduct a search or seizure of evidence without a search warrant. Under ORS 133.525(2), 133.545(2) and 133.575(1) "any police officer" may apply for and execute a search warrant in any jurisdiction within the state. It logically follows that any police officer may also conduct a search without a search warrant in any jurisdiction within the state. A warrantless search is by its nature based on the necessity for quick action that does not allow the officer to apply for a warrant or seek the assistance of officers of the jurisdiction of the search.[4] *See, e.g., State v. Berg, supra.* We conclude that the officer had authority to seize the blood samples.

In a supplemental brief, defendant challenged the sentence imposed. The convictions were merged and defendant was sentenced to 10 years imprisonment with a three-year minimum term pursuant to ORS 144.110(1). Citing *State v. Macy,* 295 Or 738, 671 P2d 92 (1983), he contends that the minimum term violated the proportionality requirement of Article I, section 16 of the Oregon Constitution or the Eighth Amendment to the United States Constitution. That argument was answered adversely to defendant's contention in *State v. Turner,* 296 Or 451, 676 P2d 873 (1984), and *State v. Brown,* 296 Or 458, 676 P2d 877 (1984).

Affirmed.

---

[4] Defendant does not separately challenge the seizure of the second blood samples taken approximately one hour after the first. We do not determine if there was a practical necessity to seize that sample without a search warrant.