NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0496-23

STATE OF NEW JERSEY,

    Plaintiff-Respondent,

v.

YONATHAN Z. SELIGMAN,

    Defendant-Appellant.

_____

**APPROVED FOR PUBLICATION
AS REDACTED**

**January 3, 2025**

**APPELLATE DIVISION**

> Argued October 8, 2024 – Decided January 3, 2025
>
> Before Judges Sumners, Susswein and Bergman.
>
> On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 22-10-1309.
>
> Brian J. Neary argued the cause for appellant (Neary Law, LLC, attorneys; Brian J. Neary, of counsel and on the briefs; Caitlin Kenny and Braden B. Couch, on the briefs).
>
> Khyzar Hussain, Legal Intern, argued the cause for respondent (Esther Suarez, Hudson County Prosecutor, attorney; Stephanie Davis Elson, Assistant Prosecutor, of counsel and on the brief; Khyzar Hussain, on the brief).

The opinion of the court was delivered by

SUSSWEIN, J.A.D.

Defendant Yonathan Seligman appeals his guilty plea conviction for possession with intent to distribute methylenedioxymethamphetamine (MDMA), also known as Ecstasy. He contends the trial court erred in denying his motion to suppress evidence seized from his apartment pursuant to a search warrant. Defendant does not challenge the validity of the warrant but rather contends the State failed to prove the officers who executed the search complied with the "knock-and-announce" rule. Specifically, defendant asserts that officers failed to comply with Attorney General Law Enforcement Directive No. 2015-1, which requires activation of their body worn cameras (BWCs) in a timely manner[1]. Off. of the Att'y Gen., Law Enf't Directive No. 2015-1, Law Enforcement Directive Regarding Police Body Worn Camera (BWCs) and Stored BWC Recordings (Jul. 28, 2015) [hereinafter BWC Directive].

Defendant asks us to create a new rule of law whereby evidence is suppressed when an officer violates the BWC Directive while executing a knock-and-announce search warrant. In the alternative, defendant contends the trial court should have drawn an adverse inference against the State and,

---

[1] The BWC Directive was revised in 2021 and 2022. Off. of the Att'y Gen., Law Enf't Directive No. 2021-5, Body Worn Camera Policy (May 25, 2021) [hereinafter Body Worn Camera Policy]; Off. of the Att'y Gen., Law Enf't Directive No. 2022-1, Update to Body Worn Camera Policy (Jan. 19, 2022).

ultimately, erred in finding the State's sole witness at the suppression hearing was credible when he testified that the officers knocked and announced their identity and intent twenty to twenty-five seconds before deploying a battering ram to enter the apartment.

In addition to challenging the execution of the search warrant, defendant contends the trial court misapplied the relevant aggravating and mitigating factors when imposing sentence. After carefully reviewing the record in light of the arguments of the parties and governing legal principles, we affirm the conviction and sentence.

I.

We discern the following facts and procedural history from the record. In February 2021, Customs and Border Protection notified the Homeland Security Investigation Newark Airport Border Enforcement Security Task Force (HSI) of a package intercepted at the John F. Kennedy airport. The package contained two plastic bags filled with green pills that tested positive for MDMA. The package was addressed to "Yoni Seligman" at a street address number on 22nd Street in Union City. That street address does not exist. After investigation, authorities determined that defendant lived at a similarly numbered street address on 22nd Street.

3

On February 16, 2021, HSI and the Port of New York/Newark Intelligence and Analytics Branch alerted the Union City Police Department that a second package had been intercepted. That package was also addressed by name to defendant but this time to his correct street address.

On February 18, 2021, a Superior Court judge signed a warrant authorizing police to enter and search defendant's apartment. The warrant expressly directed officers to make this search "[a]fter knocking and announcing [their] intent."

On February 19, 2021, Union City Police Department and HSI officers executed the search warrant and arrested defendant. They seized 520 Ecstasy tablets (1,163 grams of MDMA), cocaine, 25.47 grams of Ketamine, 370 milligrams of LSD, 120 Alprazolam tablets, over $51,000, and drug paraphernalia including a scale and pill crusher.

In October 2022, defendant was charged by indictment with first-degree maintaining/operating a controlled dangerous substance (CDS) production facility, N.J.S.A. 2C:35-4 (count 1); first-degree possession with intent to distribute MDMA, N.J.S.A. 2C:35-5(a)(1) and 5(b)(1) (count 2); first-degree possession with intent to distribute LSD, N.J.S.A. 2C:35-5(a)(1) and 5(b)(6) (count 3); second-degree possession with intent to distribute cocaine, N.J.S.A.

2C:35-5(a)(1) and 5(b)(2) (count 4); third-degree possession with intent to distribute ketamine, N.J.S.A. 2C:35-5(a)(1) and 5(b)(13) (count 5); second-degree possession with intent to distribute alprazolam, N.J.S.A 2C:35-10.5(a)(4) (count 6); five counts of second-degree possession of CDS with intent to distribute within five-hundred feet of a public housing facility, N.J.S.A. 2C:35-7.1 (counts 7 to 11); five counts of third-degree possession with intent to distribute CDS within one-thousand feet of a school, N.J.S.A. 2C:35-7(a) (counts 12 to 16); and four counts of third-degree possession of CDS, N.J.S.A. 2C:35-10(a)(1) (counts 17 to 20).

Defendant filed a motion to suppress the evidence seized during the execution of the search warrant. Union City Police Department Detective Jefte Pichardo testified that he was a part of the "stack" of officers who entered defendant's apartment pursuant to the warrant. The State presented the following testimony regarding the knock-and-announce procedure during Pichardo's direct examination:

> Prosecutor: You said that part of the stack is to knock and announce; is that correct?
>
> Pichardo: That's correct.
>
> Prosecutor: And did that happen in this execution?
>
> Pichardo: It did.

A-0496-23

Prosecutor: Who did that?

Pichardo:    Sergeant Rodriguez and one of the agents from HSI.

Prosecutor: And where were [you] when . . . Sergeant Rodriguez knocked on the door?

Pichardo:    Arm's length from the door.

Prosecutor: . . . [H]ow did Sergeant Rodriguez knock and announce?

Pichardo:    He knocked several times while stating, "Police! Search warrant!" as well as the HSI agent.

Prosecutor: And how long—well what happened after Sergeant Rodriguez and the HSI agent knocked and announced?

Pichardo:    Approximately 20 to 25 seconds, then the ram was used to enter the apartment, breach the apartment.

Pichardo further testified that he was wearing his BWC during the execution of the search warrant and activated it "prior to entering the . . . doorway." Pichardo explained that to activate the BWC, "you press [the center button] twice and it starts recording. The first 20 to 30 seconds of the

A-0496-23

body cam is just video only. After the 30 seconds, 20, 30 seconds then the audio starts recording."[2]

Pichardo testified he reviewed his BWC footage, including the initial segment without audio, and stated the silent recording shows the officers pausing before using a ram to open the door to the apartment. The prosecutor called attention to the delay in recording audio and asked Pichardo, "in that footage that we just saw there was a pause of the ram being used. Do you recall

---

[2]  Pichardo testified his BWC automatically and constantly captures video images. Once physically activated, the BWC saves and stores the preceding 20 to 30 seconds of video images and begins saving and storing audio only after its activation. We note the BWC Directive explains:

> Some BWC models may be turned on and remain in a standby or buffering mode, during which the device does not make a permanent record of images/sounds unless the officer activates the recording mode/function. With respect to these models, when the officer activates the recording mode/function, the device automatically preserves an electronic recording of the events that transpired a fixed period of time (e.g., 30 seconds) before the recording mode/function was activated. This time-delay or "buffering" feature allows the device to capture data concerning the event/circumstances that prompted the officer to activate the BWC. When an officer does not activate the recording mode/function, data captured while the device is in standby/buffering mode is overwritten automatically.
>
> [BWC Directive at 2, n.1.]

why that was?" Pichardo responded, "I believe he was saying, again, 'Police! Search warrant!'"

On cross-examination, Pichardo clarified that Sergeant Rodriguez was knocking and announcing whereas the HSI agent was only announcing. Pichardo testified that he did not activate his BWC until the ram was used to open the apartment door and acknowledged that he should have activated it earlier.

The State stipulated that the other participating officers also activated their BWCs after entering the apartment and that none of the BWCs were recording audio when the knock-and-announce warning was issued.

On May 31, 2023, the trial court denied defendant's motion to suppress, issuing an eleven-page written opinion. The trial court found that "there is credible testimony to support law enforcement's compliance with the knock and announce requirement." Specifically, the trial court explained, "[t]here is credible testimony from Detective Pichardo that he witnessed Officer Rodriguez knock and announce the presence of law enforcement. The officers then waited twenty to twenty-five seconds before forcibly entering the apartment. Officer Pichardo's body camera was activated immediately prior to entering the apartment . . . ."

A-0496-23

In July 2023, defendant pled guilty pursuant to a negotiated plea agreement to count two of the indictment charging first-degree possession with intent to distribute MDMA. The plea agreement provided that "sentence [is] to be treated in second degree range." The plea agreement further provided that the remaining charges would be dismissed.

On October 13, 2023, in accordance with the plea agreement, the trial court sentenced defendant to a seven-year prison term. The trial court did not impose a period of parole ineligibility. Defense counsel had argued for a five-year prison term.

This appeal followed. Defendant raises the following contentions for our consideration:

POINT I

THE TRIAL JUDGE ERRED IN DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE YIELDED FROM THE EXECUTION OF A SEARCH WARRANT.

POINT II

DEFENDANT IS ENTITLED TO A RESENTENCING BECAUSE THE TRIAL JUDGE FAILED TO FOLLOW THE REQUIREMENTS OF THE CODE OF CRIMINAL JUSTICE IN IMPOSING SENTENCE.

SUBPOINT A

THE SENTENCING JUDGE FAILED TO PROPERLY CREDIT WITH ALL THE APPROPRIATE MITIGATING FACTORS.

Defendant raises the following additional contentions in his reply brief:

POINT I

THE STATE MIS[]APPLIES THE RELEVANT CASELAW IN SUPPORT OF THE TRIAL COURT'S ERROR IN FAILING TO SUPPRESS EVIDENCE SEIZED PURSUANT TO NO KNOCK WARRANT.

POINT II

STATE'S ARGUMENT REGARDING CLAIM DEFENDANT IS NOT ENTITLED TO A RESENTENCING, IS UNAVAILING TO PRESENT MATTER, BECAUSE THE TRIAL JUDGE FAILED TO FOLLOW THE REQUIREMENTS OF THE CODE OF CRIMINAL JUSTICE IN IMPOSING SENTENCE.

SUBPOINT A

THE SENTENCING JUDGE FAILED TO PROPERLY CREDIT WITH ALL THE APPROPRIATE MITIGATING FACTORS.

II.

We first address defendant's suppression argument. The scope of our review of a trial court's decision on a motion to suppress is limited. State v. Ahmad, 246 N.J. 592, 609 (2021). "Generally, on appellate review, a trial

court's factual findings in support of granting or denying a motion to suppress must be upheld when 'those findings are supported by sufficient credible evidence in the record.'" State v. A.M., 237 N.J. 384, 395 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017)). We defer to those factual findings because of the trial court's "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007) (quoting State v. Johnson, 42 N.J. 146, 161 (1964)). Accordingly, we "ordinarily will not disturb the trial court's factual findings unless they are 'so clearly mistaken "that the interests of justice demand intervention and correction."'" State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). However, legal conclusions drawn from those facts are reviewed de novo. State v. Radel, 249 N.J. 469, 493 (2022).

A.

Turning to substantive legal principles, the Fourth Amendment of the United States Constitution and Article I, Paragraph 7 of the New Jersey Constitution establish warrant requirements that protect against unreasonable searches and seizures. U.S. Const. amend. IV.; accord N.J. Const. art. I, ¶ 7. "There are two types of warrants police can request: a no-knock warrant and a

knock-and-announce warrant." State v. Caronna, 469 N.J. Super. 462, 486 (App. Div. 2021). A knock-and-announce warrant requires police to knock on the door and announce their presence before executing a search warrant. State v. Johnson, 168 N.J. 608, 615-16 (2001). "The knock-and-announce rule protects 'human life and limb, because an unannounced entry may provoke violence in supposed self-defense by the surprised resident.'" Caronna, 469 N.J. Super. at 499 (quoting Hudson v. Michigan, 547 U.S. 586, 594 (2006)). "Suffice it to say that the rule safeguards against violence to occupants of the residence, and importantly, likewise protects police officers themselves." Ibid.

It is long established under both the Fourth Amendment and Article I, paragraph 7 of the New Jersey Constitution that the exclusionary rule bars the State from admitting evidence obtained from an unconstitutional search or seizure. Wong Sun v. United States, 371 U.S. 471, 485-88 (1963); State v. Shaw, 213 N.J. 398, 412-13 (2012). It is also well-settled that the exclusionary rule is invoked "following an unjustifiable entry into a dwelling in violation of a knock-and-announce requirement contained in a search warrant." Caronna, 469 N.J. Super. at 495.

The suppression of evidence, it bears noting, is the appropriate remedy when a defendant's constitutional rights have been violated. See State v.

Novemberino, 105 N.J. at 157-58 (1987); see also Caronna, 469 N.J. at 490.  The exclusionary rule ordinarily does not apply, however, when police violate a statute rather than a constitutional rule.  See State v. White, 305 N.J. Super. 322, 332 (App. Div. 1997) (holding that extra-jurisdictional search by local police in violation of statute defining the powers of municipal police officers does not rise to the level of a constitutional violation, and thus does not require invocation of the exclusionary rule); State v. Gadsden, 303 N.J. Super. 491, 505 (App. Div. 1997) (holding that arrest of defendant in his Newark home by Hillside police in violation of statute setting jurisdictional limits of municipal police does not require suppression of evidence found in search incident to arrest).  See also State v. Gioe, 401 N.J. Super. 331, 342-44 (App. Div. 2008) (declining to apply the exclusionary rule where search warrant was improperly issued by a municipal court judge based on an application of a law enforcement officer who had not appeared personally before the judge as Rule 3:5-3(a) required).  As we stressed in Caronna, "[s]uppression of evidence . . . has always been our last resort, not our first impulse."  469 N.J. at 490 (quoting State v. Presley, 436 N.J. Super. 440, 459 (App. Div. 2014)).

A-0496-23

B.

The BWC Directive specifies when an officer equipped with a BWC is required to activate the device. Section 5.2(h) specifically provides that a BWC must be activated when "the officer is conducting any kind of search (consensual or otherwise)." Id. at 9. Furthermore, Section 5.4 provides in relevant part, "[t]o ensure that the entire encounter/event/episode is recorded, when feasible, a BWC should be activated before a uniformed officer arrives at the scene of a dispatched call for service or other police activity listed in section 5.2." Id. at 11.

Attorney General Directive 2021-12, titled Directive Regulating "No-Knock" Warrants, cross-references the BWC Directive, explaining, "[p]ursuant to [the BWC Directive], which established and implemented the statewide Body Worn Camera Policy, officers are required to wear body worn cameras when executing search warrants. That requirement provides a video record of search warrant execution, should it become necessary to perform further review of no-knock provisions in the future." Off. of the Att'y Gen., Law Enf't Directive No. 2021-12, Directive Regulating "No-Knock" Warrants, at 2 n.1 (Dec. 7, 2021) [hereinafter No-Knock Directive].

A-0496-23

Relevant to this appeal, the BWC Directive further provides:

> Although BWCs record events accurately and objectively, they do not replace the need for complete and accurate police reports and testimony. The fact that a BWC is not activated to record an encounter or event does not, of course, preclude an officer from testifying as to the circumstances of the encounter or event, or affect the admissibility of evidence. Nor does it suggest that the officer's written report or testimony is inaccurate or incomplete. However, a BWC recording can supplement and corroborate the accuracy of written reports and testimony . . . .
>
> [Id. at 3, §1.2.]

The BWC Directive also states:

> Nothing in this Directive shall be construed in any way to create any promises or any rights beyond those established under the Constitutions, statutes, and regulations of the United States and the State of New Jersey. The provisions of this Directive are intended to be implemented and enforced by law enforcement agencies that deploy BWCs, and these provisions do not create any promises or rights that may be enforced by any other persons or entities.
>
> [Id. at 23, §15.]

The BWC Directive's 2021 revision added:

> If a law enforcement officer, employee, or agent fails to adhere to the recording or retention requirements contained in this Policy, intentionally interferes with a BWC's ability to accurately capture audio or video recordings, or violates any other provision of this policy, the officer, employee, or agent shall be subject

15

to appropriate disciplinary action, in addition to any judicial consequences outlined in the law.

[Body Worn Camera Policy, at 26, §13.]

The No-Knock Directive similarly explains:

This Directive is issued pursuant to the Attorney General's authority to ensure the uniform and efficient enforcement of the laws and administration of criminal justice throughout the State. This Directive imposes limitations on law enforcement agencies and officials that may be more restrictive than the limitations imposed under the United States and New Jersey Constitutions, and federal and state statutes and regulations. Nothing in this Directive shall be construed in any way to create any substantive right that may be enforced by any third party.

[No-Knock Directive, at §V(A).]

C.

In rejecting defendant's challenge to the execution of the search warrant, the trial court reasoned:

[T]he [officers'] failure to activate their body cameras is not a constitutional violation. Law enforcement knocked and announced their presence; the only issue is the failure to record the audio demonstrating officers knocked and announced. Suppression of narcotics and other evidence of criminality discovered pursuant to a valid warrant is a remedy saved for constitutional violations. A remedy [is] not proscribed by any precedent, nor the Attorney General directive which Defendant relies upon.

16

We agree with the trial court that the failure to comply with the BWC Directive does not constitute a constitutional violation.  Defendant nonetheless argues the "ever-expanding utilization and policy surrounding law enforcement use of body worn cameras . . . warrants a change in the law as to what the recourse is for failure to properly utilize body worn cameras."  Defendant further argues, "without requiring suppression . . . there is absolutely nothing to deter law enforcement" from not activating their BWCs.

We are unpersuaded.  Defendant cites no authority for the proposition that a violation of an Attorney General directive triggers the exclusionary rule when, as in this instance, the directive imposes a procedural requirement that neither the United States nor New Jersey Constitutions impose.  We decline defendant's invitation to create any such new legal principle.

## D.

Importantly, the exclusionary remedy that defendant urges us apply to the BWC Directive violations goes well beyond the remedy adopted by the Legislature in the statute that now governs the use of BWCs, N.J.S.A. 40A-118.5.  That statute incorporates guidelines or directives promulgated by the Attorney General about when body worn cameras should be activated.  See N.J.S.A. 40A:14-118.5(c)(1).

17

N.J.S.A. 40A:14-118.5(q)(2) provides:

> If a law enforcement officer, employee, or agent fails to adhere to the recording or retention requirements contained in this act, or intentionally interferes with a body worn camera's ability to accurately capture audio or video recordings:
>
> . . . .
>
> (2) there shall be a rebuttable presumption that exculpatory evidence was destroyed or not captured in favor of a criminal defendant who reasonably asserts that exculpatory evidence was destroyed or not captured;

In State v. Jones, we rejected the trial judge's determination that the rebuttable presumption set forth in N.J.S.A. 40A:14-118.5(q) is limited to trials and does not apply to suppression hearings. 475 N.J. Super. 520, 531-32 (App. Div. 2023). But nothing in the text of the statute, or in our interpretation of it in Jones, suggests that a violation the BWC Directive, now incorporated by reference in N.J.S.A. 40A:14-118.5, warrants automatic suppression of evidence otherwise lawfully seized under our State and federal constitutions. We note that the Legislature clearly knows how to prescribe the suppression remedy for statutory violations, see, e.g., N.J.S.A. 2A:156A-21, but did not do so with respect to BWC violations.

That leads us to consider whether the rebuttable presumption established in the statute applies to the matter before us. Defendant contends the officers'

failure to timely activate their BWCs requires "suppression, or at a minimum . . . a negative inference." Defendant argues again, without suppression or a negative inference, "there is absolutely nothing to deter law enforcement" from failing to timely activate their BWCs.

We hold that the rebuttable presumption established in N.J.S.A. 40A:14-118.5(q) does not apply in this case because the statute did not take effect until after the search warrant was executed on February 19, 2021. See N.J.S.A. 40A:14-118.5 (effective Jun. 1, 2021) (citing L. 2020, c. 129, §2 ("This act shall take effect on the first day of the seventh month after enactment.")). In State v. Boone, we held that "the rebuttable presumption of N.J.S.A. 40A:14-118.5 did not take effect until after this stop, making it inapplicable at the suppression hearing." 479 N.J. Super. 193, 197 n.1 (App. Div. 2023) (citing Jones, 475 N.J. Super. at 530-31).

We add that "[t]he courts of this State have long followed a general rule of statutory construction that favors prospective application of statutes." Gibbons v. Gibbons, 86 N.J. 515, 521 (1981) (footnote omitted). A two-part test is used to determine whether a statute may be applied retroactively. Matter of D.C., 146 N.J. 31, 50 (1996) (quoting Phillips v. Curiale, 128 N.J. 608, 617 (1992)). Courts look to (1) "whether the Legislature intended to give the statute

retroactive application" and (2) "whether retroactive application of that statute will result in either an unconstitutional interference with 'vested rights' or a 'manifest injustice.'"  Ibid. (quoting Phillips, 128 N.J. at 617).

Relatedly, courts may infer a prospective intent when the Legislature is silent on the issue because of the "knowledge that courts generally will enforce newly enacted substantive statutes prospectively," absent a clear expression of contrary intent from the Legislature.  Maeker v. Ross, 219 N.J. 565, 578 (2014) (emphasis omitted).  Without a clear expression of contrary intent, a statute that relates to substantive rights and changes settled law will be applied prospectively.  Ibid.

We emphasize that in this instance, we are not dealing with a statute that is silent as to its prospective application.  On the contrary, the Legislature expressly delayed the effective date for seven months after enactment, making even more clear the statute was not intended to have retroactive effect.

Accordingly, the trial court was not required to apply a "rebuttable presumption" or draw a "negative inference" against the State.  Even so, the trial court did consider the "failure to record the audio demonstrating that officers knocked and announced."  As we have noted, Pichardo acknowledged that he should have activated his BWC earlier.  The record shows, moreover, Pichardo

20

was subjected to skillful cross-examination, after which the trial court found he was credible. Cf., State v. Castagna, 187 N.J. 293, 309 (2006) (noting that cross-examination has been described as "the 'greatest legal engine ever invented for the discovery of truth'") (quoting California v. Green, 399 U.S. 149, 158 (1970)).

In sum, in these circumstances, we have no basis upon which to substitute our judgment for the trial court's credibility determination, which was not "so clearly mistaken 'that the interests of justice demand intervention and correction.'" Goldsmith, 251 N.J. at 398 (quoting Elders, 192 N.J. at 244). We thus conclude there is sufficient credible evidence in the record to support the trial court's conclusion that police did in fact knock and announce their identity and intent before using force to execute the search warrant.[3] Accordingly, the trial court properly denied the motion to suppress evidence.

---

[3] We note defendant does not argue in his brief that insufficient time was afforded between the announcement and the forcible entry. Compare United States v. Banks, 540 U.S. 31 (2003) (Court sustained execution of search warrant when police announced their presence and forcibly entered after they did not receive any response after fifteen to twenty seconds) with State v. Nieves, 476 N.J. Super. 405 (App. Div. 2023) (synopsizing the factors relevant to the reasonableness of the delay between a knock-and-announce and forcible entry and holding that officers did not wait a reasonable time where record showed officers made three knock-and-announces in rapid succession and less than five seconds elapsed between completion of the first knock-and-announce and forcibly entry).

III.

**[At the direction of the court, the published version of this opinion omits the court's discussion of defendant's sentencing arguments. See R. 1:36-3.]**

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-0496-23