265 N.J. Super. 208 (1990)
625 A.2d 1162
STATE OF NEW JERSEY, PLAINTIFF,
v.
ELIZABETH LYNN CITTA AND GREGORY FUHS, DEFENDANTS.
Superior Court of New Jersey, Law Division Somerset County.
Decided February 1, 1990.
*210 Nicholas L. Bissell, Jr., Prosecutor of Somerset County, Timothy M. Van Hise, Assistant Prosecutor, appearing for the State.
Donald J. Rinaldi appearing for defendant, Elizabeth Lynn Citta (De Rose and Rinaldi, attorneys).
Dennis Alan Cipriano appearing for defendant, Gregory Fuhs.
IMBRIANI, J.S.C.
Is the warrantless use of binoculars by a police officer to observe objects not visible to the naked eye an unreasonable search under the Fourth Amendment to the U.S. Constitution? We hold it is not.[1] The only comment on this issue which we could find in a U.S. Supreme Court decision was dicta in On Lee v. United States, 343 U.S. 747, 754, 72 S.Ct. 967, 972, 96 L.Ed. 1270, 1276 (1952) stating that "[the] use of bifocals, field glasses or the telescope to magnify the object of a witness' vision is not a forbidden search or seizure, even if they focus without his knowledge *211 or consent upon what one supposes to be private indiscretions".
On September 12, 1988 an anonymous telephone call was received at police headquarters on their drug hotline stating that marijuana plants were being grown in the backyard of premises at 402A Amwell Road in Franklin Township. The caller described a mail box and two cars parked on the premises. No names were given.
The next day two police officers drove past the premises several times and on one occasion stopped their vehicle in the road to look into the backyard of defendant's private residence. They testified that the information as to the mail box and parked cars was accurate. Although there were many trees and shrubs in the side yard, the officers were able to see through the open spaces of the foliage to observe many cultivated plants about six feet tall in the backyard which they could not identify with the naked eye but with binoculars they were able to identify as marijuana plants.[2] With this information they obtained a search warrant and seized twenty-seven marijuana plants growing in the backyard, together with a large quantity of marijuana within the house.
The Fourth Amendment guarantees the "right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures". These are words of limitation which proscribe unreasonable investigative procedures only if they are "searches and seizures" within the intent of the Fourth Amendment. While the Fourth Amendment is couched in the conjunctive pursuant to general statutory construction principles the proscription applies as well disjunctively to "searches" or *212 "seizures". See State v. Astore, 21 N.J. Super. 376, 379, 91 A.2d 257 (App.Div. 1952).
The meaning of the word "seizures" has not presented any difficulty for our courts. A seizure is deemed to occur whenever there is a physical taking or removal of personal property. Any meaningful interference with a person's possessory interest in personal property is deemed to be a seizure. On the other hand the meaning of the word "searches" is not easily described. We are unaware of any comprehensive definition but as commonly used a search implies intentional conduct, as opposed to casual conduct, to discover something that has been concealed. It is the antithesis of observing an object which is in open view. For instance, we do not describe an observation of the sun or the sky as being a "search". Obviously the use of a device to enhance vision indicates an intent to observe something not clearly visible to the naked eye and would imply more than a casual observation. Although there are many cases involving the use of binoculars, we are unaware of any case which has held their use is not a search. Accordingly, we conclude that the use of binoculars to enhance vision is a search.[3] Consequently, the issue in this case is not whether there was a search but whether the use of binoculars without a search warrant constitutes an unreasonable search in violation of the Fourth Amendment?
Early analysis of Fourth Amendment violations relied heavily on property and tort law and generally focused on whether a physical trespass occurred. See Olmstead v. U.S., 277 U.S. 438, 48 S.Ct. 564, 72 L.Ed. 944 (1928) and Silverman v. United States, 365 U.S. 505, 81 S.Ct. 679, 5 L.Ed.2d 734 (1961). But in Katz v. U.S., 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), where the police overheard the defendant's end of a telephone conversation without committing a physical trespass by attaching an electronic *213 listening device to the outside of a public telephone booth, the foundation of the Fourth Amendment shield was significantly expanded.
The Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection. [citations omitted] But what he seeks to preserve as private, even in an area accessible to the public, may be constitutionally protected. (389 U.S. at 351-352 88 S.Ct. at 511).
The oft-quoted test to determine what constitutes a constitutionally protected Fourth Amendment right was enunciated in the concurring opinion of Justice Harlan who distilled from the majority opinion and its antecedents:
a twofold requirement, first that a person have exhibited an actual (subjective) expectation of privacy and, second, that the expectation be one that society is prepared to recognize as `reasonable'. 389 U.S. at 361, 88 S.Ct. at 516.
The main issue in most cases dealing with contraband, especially drugs, is not whether the defendant "exhibited an actual (subjective) expectation of privacy", which always exists, but whether "that expectation be one that society is prepared to recognize as `reasonable'". As observed in United States v. White, 401 U.S. 745, 751-52, 91 S.Ct. 1122, 1126, 28 L.Ed.2d 453 (1971) where conversations between an informant and the defendant in the defendant's home were overheard by monitoring a radio transmitter which was concealed on the body of the informant:
[o]ur problem is not what the privacy expectations of particular defendants in particular situations may be... Our problem, in terms of the principles announced in Katz, is what expectations of privacy are constitutionally `justifiable'  what expectations the Fourth Amendment will protect in the absence of a warrant.
In several cases warrantless searches of the exterior of property with the use of a scientific device to enhance vision were upheld even though the defendant demonstrated an actual, subjective expectation of privacy e.g., nighttime observations by a coast guardman of liquor on the deck of a motorboat by shining a searchlight, United States v. Lee, 274 U.S. 559, 47 S.Ct. 746, 71 L.Ed. 1202 (1927), the aerial observation from a height of 1,000 feet of marijuana plants being grown in a fenced-in backyard, California v. Ciraolo, 476 U.S. 207, 106 S.Ct. 1809, 90 L.Ed.2d 210 *214 (1986), the taking of aerial photographs of a chemical company's industrial complex to perform "site inspection" under the federal Clean Air Act, Dow Chemical Co. v. United States, 476 U.S. 227, 106 S.Ct. 1819, 90 L.Ed.2d 226 (1986), and helicopter surveillance of the backyard of a residence with the naked eye from a height of 400 feet. Florida v. Riley, 488 U.S. 445, 109 S.Ct. 693, 102 L.Ed.2d 835 (1989). Frequently defendants do not even think about the problem and when they do it is obvious that since they are dealing with contraband they expect that what they are doing remain private. Thus, in California v. Greenwood, 486 U.S. 35, 108 S.Ct. 1625, 100 L.Ed.2d 30 (1988) it was conceded that the defendant had an actual and subjective expectation that the contents of opaque garbage bags left at the curb of his residence would remain private but this was not an expectation that society will accept as reasonable and the warrantless search of the garbage bags was upheld.
Is a "search" with the use of binoculars an invasion of one's privacy that society is prepared to accept without the necessity of obtaining a search warrant? We believe it is. In an age where the possession and use of binoculars by the average citizen, as well as the police, is so common it is unreasonable for property owners to expect that objects within their curtilage not shielded by a fence or other barrier will not be observed by persons passing their home on the road or sidewalk. As said by Justice O'Connor in her concurring opinion in Florida v. Riley, supra 488 U.S. at 454, 109 S.Ct. at 698:
Individuals who seek privacy [from those passing their homes while traveling in the roadway or on sidewalks] can take precautions, tailored to the location of the road, to avoid disclosing private activities to those who pass by. They can build a tall fence, for example, and thus ensure private enjoyment of the curtilage without risking public observation from the road or sidewalk. If they do not take such precautions, they cannot reasonably expect privacy from public observation.
Although we appreciate that the denial of a petition for a writ of certiorari carries no implication regarding the opinion of the Supreme Court on the merits of the case, Teague v. Lane, 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989), we nonetheless note that recently the United States Supreme Court denied certification *215 in Tyler v. Berodt, 877 F.2d 705 (8th Cir.1989), cert. den., 493 U.S. 1022, 110 S.Ct. 723, 107 L.Ed.2d 743 (1990), where the Circuit Court held that the interception of telephone conversations made over cordless telephones without a search warrant did not constitute an unreasonable search under the Fourth Amendment because the conversations could "be overheard by countless people" (at 706) and "we do not believe the Tylers had justifiable expectation of privacy for their conversations". (at 707).
The use of devices to enhance vision and other senses has been sanctioned in the past. For instance, eyeglasses enhance vision, yet no one can reasonably argue that observations made by a police officer wearing glasses constitutes an unreasonable search. Moreover, courts throughout the nation, including this state, accept without question the admissibility of electronically intercepted statements made by a defendant which he intended to remain private even when made in the privacy of one's home. See United States v. White, supra. The philosophy underlying the admissibility of such evidence is that those involved in illegal activities should anticipate the use by the police of scientific devices commonly used by and available to the general public, and we should neither shield defendants from the risk that their illegal activities may be observed with the use of commonly used scientific devices, "[n]or should we be too ready to erect constitutional barriers to relevant and probative evidence which is also accurate and reliable." United States v. White, supra, 401 U.S. at 753 and 91 S.Ct. at 1126. Patently, binoculars are commonly used scientific devices and provide information which is accurate and reliable.
There are several cases that have addressed this issue, but since none are from the U.S. Supreme Court or an Appellate Court in New Jersey. They are not binding upon this court. See State v. Broxton, 49 N.J. 373, 230 A.2d 489 (1967) (state courts not bound by Federal District Court decisions); State v. Reynolds, 166 N.J. Super. 570, 400 A.2d 142 (Law Div. 1979) (state court not bound by U.S. Court of Appeals decisions); and Chamber of Commerce E. Union City v. Leone, 141 N.J. Super. 114, 357 A.2d *216 311 (Ch.Div. 1976), aff'd 75 N.J. 319, 382 A.2d 381 (1978) (New Jersey courts not bound by decisions of courts in other states).
The warrantless use of vision enhancement equipment to make observations not visible with the naked eye was upheld in United States v. Ward, 546 F. Supp. 300 (W.D.Ark. 1982), United States v. Christensen, 524 F. Supp. 344 (N.D.Ill. 1981), Saylor v. State, 185 Ga. App. 634, 365 S.E.2d 493 (1988), and U.S. v. Allen, 633 F.2d 1282 (9th Cir.1980), but was disallowed in U.S. v. Taborda, 635 F.2d 131 (2d Cir.1980); State v. Barnes, 390 So.2d 1243 (Fla.App. 1980); State v. Kender, 60 Haw. 301, 588 P.2d 447 (1979); and U.S. v. Kim, 415 F. Supp. 1252 (D.Haw. 1976). However, Taborda and Kim are distinguishable; Taborda because it involved observations made with a high-power telescope through a window into the interior of a private residence, and Kim because although it held that observations of both the interior of an apartment and an outside balcony with a telescope and high-powered binoculars were illegal under the Fourth Amendment, it did state that the activity on the outside balcony, "if standing alone, might very well not have invaded Kim's privacy". (at 1257).
The cases rejecting the use of evidence obtained with the use of binoculars or telescopes did not have the benefit of Ciraolo, Dow Chemical, and Riley and relied heavily on Katz which they read as prohibiting the use of sophisticated scientific devices to spy on citizens. Presumably those courts believed that binoculars and high power telescopes are sophisticated scientific devices. We do not share that view, especially as to binoculars, and agree with U.S. v. Allen, supra at 1290-1291, that "[t]he use of aids to the senses such as binoculars does not convert unobjectionable surveillance into a prohibited search". We believe that unlike the interior of one's home, society has a considerably reduced expectation of privacy with regard to objects or activities in a backyard. There is no sound reason to expect the police to patrol or conduct surveillances with blinkers on and not observe objects "visible to any curious passerby" who uses binoculars. James v. United States, 418 F.2d 1150, 1151 (App.D.C. 1969). As said in Fullbright *217 v. United States, 392 F.2d 432 (10th Cir.1968), cert. den., 393 U.S. 830, 89 S.Ct. 97, 21 L.Ed.2d 101 (1968) which sustained the admissibility of evidence obtained by looking into defendant's backyard shed with binoculars:
observations from outside the curtilage of activities within are not generally interdicted by the Constitution. Indeed, to so hold might require passing officers to close their eyes to the commission of felonies on front door steps. (at 434).
These police officers were entitled to be in the roadway and were not violating the law when they made their observations, factors emphasized in Florida v. Riley, supra 488 U.S. at 451, 109 S.Ct. at 697 which said:
it is of obvious importance that the helicopter in this case was not violating the law, and there is nothing in the record or before us to suggest that helicopters flying at 400 feet are sufficiently rare in this country to lend substance to respondent's claim that he reasonably anticipated that his greenhouse would not be subject to observation in that altitude.
We find nothing inherently objectionable to a person looking into someone else's backyard provided, of course, there is no physical trespass upon the property. We all commonly look into the yards of others as we walk or drive past. For these reasons we hold that the use of binoculars by police standing in the roadway to observe contraband in the exterior of the curtilage of a residence which could not be identified with the naked eye is not an unreasonable search under the Fourth Amendment.
NOTES
[1] There were several other factual and legal issues addressed in this Motion to Suppress Evidence but this opinion will be limited to this narrow issue.
[2] The court rejected the claim of defendants that the trees and shrubs were so thick that they created a visually impenetrable barrier which prevented the observation plants being grown in their backyard. The court also rejected their claim that the only way the police could observe the plants was to trespass onto their property.
[3] Since this was a search we conclude that the "plain view" exception to the requirement for a search warrant is not applicable. See Coolidge v. New Hampshire, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971).