280 N.J. Super. 377 (1995)
655 A.2d 476
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JORGE MONTALVO, STACIE SCOTT,[1] MARK VAN RIPER AND DENNIS VAN RIPER, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Submitted November 22, 1994.
Decided March 24, 1995.
*378 Before Judges MICHELS, STERN and HUMPHREYS.
John J. O'Reilly, Warren County Prosecutor, attorney for appellant (Stephanie P. Tettemer, Assistant Prosecutor, of counsel and on the brief).
Harold J. Bush, attorney for respondent Jorge Montalvo (Mr. Bush, of counsel and on the brief).
Russo & Mamrak Russo, attorneys for respondent Mark Van Riper, relied on the brief of Jorge Montalvo.
Brause and Brause, attorneys for respondent Dennis Van Riper, relied on the brief submitted to the trial court on the motion to suppress evidence.
The opinion of the court was delivered by STERN, J.A.D.
*379 Pursuant to leave granted, the State appeals from an order of the Law Division, entered on February 10, 1994, granting defendants' motion to suppress. The motion judge concluded that a Washington Township police officer lacked jurisdiction to conduct a search in neighboring Washington Borough. We reverse.

I.
Early in the morning of August 28, 1993, Patrolman William Beck of the Washington Township Police Department was dispatched to the Bagelsmith Store in Washington Borough, a contiguous municipality. Beck was directed to answer the call because of the unavailability of Washington Borough police officers who were all "tied up" on another matter. The dispatcher told Beck he had received a report of a "suspicious vehicle in the parking lot of the Bagelsmith" Store and that "[s]omeone was burning something outside of the vehicle." Beck was the only police officer to have been dispatched at the time and arrived on the scene at 3:20 a.m.
At that time, the Washington Township and Washington Borough Police Departments had a long-standing practice of covering for each other when necessary to perform police duties. According to the testimony of Washington Borough Police Chief Steven Speirs, the two municipalities had a mutual assistance "agreement" at the time in question, and the two police departments "worked very closely together, almost like one department." The two municipalities were also then in the process of enacting agreements and reciprocal ordinances to implement this policy. The Township had adopted its ordinance on June 15, 1993, over two months before Beck responded on August 28, but its effective *380 date was dependent upon adoption of a similar ordinance by the Borough. Therefore, the ordinances both took effect upon the adoption of the Borough's ordinance on September 7, 1993, ten days after the conduct in question.
After hearing the evidence presented on a motion to suppress, the Law Division judge determined on January 24, 1994, that Beck could "reasonably conclude in an objective way ... that criminal activity may be afoot and that the persons [Beck was] presently dealing with may be armed and dangerous." The judge also found that, based on defendants' conduct after Beck arrived, the officer had the right to direct the occupants of the vehicle to exit the car, to conduct a Terry search of the car for weapons, and to seize containers which then came within his "plain view." The judge, thus, denied the motion to the extent it was premised "on the grounds that the police lacked probable cause."[2] After hearing further argument, however, on February 10, 1994, the judge granted the motion "on the grounds that the police lacked jurisdiction to search" the car.
In light of the position of the parties before us, including particularly the absence of a motion for leave to cross-appeal and any argument addressed to the validity of the search from a constitutional standpoint, we proceed on the basis that the trial judge properly concluded that there was probable cause for the search. R. 2:11-3(e)(2).

*381 II.
The propriety of the suppression order, therefore, turns on the judge's determination that Patrolman Beck lacked the statutory authority to take the action he did outside of Washington Township. The judge concluded that in the absence of mutual aid ordinances adopted by Washington Borough and Washington Township, Officer Beck had no authority to take the action he did in the neighboring Borough. Our analysis of the applicable statutes, however, leads us to conclude that no ordinance was necessary to implement a mutual aid policy in the contiguous municipalities.
N.J.S.A. 40A:14-152 provides "the powers" of police officers within the municipality which employs them. But it is clear that the Legislature contemplated that police officers would often have to act beyond their traditional jurisdiction. For example, N.J.S.A. 40A:14-152.1 provides that:
Notwithstanding the provisions of N.J.S. 40A:14-152 or any other law to the contrary, any full-time, permanently appointed municipal police officer shall have full power of arrest for any crime committed in said officer's presence and committed anywhere within the territorial limits of the State of New Jersey. (Emphasis added.)
Thus, in State v. Henry, 133 N.J. 104, 110, 627 A.2d 125, cert. denied, ___ U.S. ___, 114 S.Ct. 486, 126 L.Ed.2d 436 (1993), the Supreme Court noted that N.J.S.A. 40A:14-152.1 comports with the common law of arrest, which "allow[s] peace officers to arrest without a warrant if a breach of the peace was committed in their presence." See also State v. Smith, 37 N.J. 481, 494-95, 181 A.2d 761 (1962), cert. denied, 374 U.S. 835, 83 S.Ct. 1879, 10 L.Ed.2d 1055 (1963).
The motion judge acknowledged that N.J.S.A. 2A:14-152.1 gave Beck the authority to arrest for a crime committed in his presence and that "[t]here is no question ... that ultimately the police officer ... was in a position where an offense was committed *382 within his presence." But the judge saw the question before him as whether Beck "exceeded his authority before he got himself in that position." The judge concluded that, as there was "no statute which gives a police officer outside of his territory the authority to act as a police officer other than the statute which gives him the right to arrest if an offense is in his presence," the officer was prohibited from taking the steps he did before he made the observation which justified the arrest. The judge ruled:
he made the observation after he had ordered them out of the vehicle and the ... critical question which has to be resolved is whether he had the authority to do that which he did up to the point of getting himself in a position to observe an offense being committed in his presence, that is ordering the occupants of this vehicle out of the vehicle in the manner in which he did. And I find there is no statute which gives him that jurisdiction.
....
I therefore find that what the police officer did in this case was outside of his authority. He was not given jurisdiction by the legislature to do what he did which put him in a position where he was able to make that observation which caused him to see this offense in his presence. There is no question that once the offense is in his presence he could make the arrest, but he didn't have a right to do what he did before that. And that is the reason I have to say that I would have to grant this motion. The police officer did not have jurisdiction to do what he did.
It is true, as defendants contend, that our case law provides "that generally a governing body can directly exercise its police power only within its jurisdictional boundaries, absent a statute broadening those powers." See State v. Cohen, 73 N.J. 331, 342, 375 A.2d 259 (1977); see also State v. Williams, 136 N.J. Super. 544, 548, 347 A.2d 33 (Law Div. 1975); State v. McCarthy, 123 N.J. Super. 513, 517, 303 A.2d 626 (Law Div. 1973), all decided before the adoption of N.J.S.A. 40A:14-152.1 in 1978.
Defendants, of course, acknowledge N.J.S.A. 40A:14-152.1 and other statutes, but insist that they provide "limited exceptions to the general territorial limitations of municipal police," and argue that the exceptions must be confined to conduct expressly authorized by the Legislature. Thus, while defendants acknowledge the exception embodied in N.J.S.A. 40A:14-156, entitled "[p]olice assistance in other municipality; payment; rights in event of casualty *383 or death," they contend that it must be implemented by ordinance, pursuant to N.J.S.A. 40A:156.1, which governs "[a]greements between municipalities for mutual police or fire aid in emergency." The judge appears to have adopted this contention because he concluded:
Now there is one other statute that gives the police officer a right to do what this police officer did, and that is the statutes 40:14-156.1, which is the statute which deals with agreements between municipalities. And that statute has been on the books since 1976 as I see it here. And notwithstanding the fact that it was on the books since 1976, no one in Washington Borough or Washington Township apparently, since all I have before me are the two ordinances which were passed, saw fit to past [sic] any ordinances to bring that statute into affect [sic] until 1993. Which gets us, gets the matter before the court since they were a little late. The one municipality was even a little late then because the ordinance was not passed until after this incident took place. So, obviously, 156.1 doesn't apply.
....
This is a unique situation where he thought he had jurisdiction. This is not a road police officer going around looking for trouble, he thought he was doing his job and no one on earth is going to criticize this police officer for being there and doing what he thought he was doing. Which I think perhaps someone should be critical of those who did not pass the appropriate ordinances in order to give this police officer the jurisdiction that he should of had. The law was on the books for a long time and they never properly complied with that law. It requires that there be reciprocal ordinances, even counsel stipulated that this wasn't so because the ordinances weren't [] passed.
The motion judge thus held that, while an officer could arrest for an offense occurring in his or her presence while lawfully performing police duties beyond the territorial jurisdiction of his or her employing municipality, no such authority was conveyed here because no mutual aid agreement then existed between the municipalities permitting Beck to take the steps he did before observing the crime. We conclude that the judge read the controlling statutes too narrowly.
N.J.S.A. 40A:14-156 provides, in part:
In the event of an emergency the chief or other head of any municipal police department and force ... may request, from the chief or other head of the police department and force of any other municipality, assistance outside the territorial jurisdiction of the department to which such request is directed for police aid, in order to protect life and property or to assist in suppressing a riot or disorder and while so acting, the members of the police department and force supplying such aid *384 shall have the same powers and authority as have the members of the police department and force of the municipality in which such aid is being rendered...
....
The chief or head of the police department and force to whom such a request for assistance is made shall, in the case of a contiguous municipality, provide such personnel and equipment as requested to the extent possible without endangering person or property within the municipality rendering such assistance.
....
[Emphasis added.]
We do not agree with the judge that this statute, originally adopted in 1971, see L. 1971, c. 197, § 1 (permitting "[p]olice assistance" upon request of that municipality's chief of police or other authorized officer), could be implemented only pursuant to another statute, N.J.S.A. 40A:14-156.1, which was not adopted until five years thereafter. See L. 1976, c. 45, § 2 (which was adopted as part of a package of laws permitting expanded cooperation between municipalities with respect to fire and police services). The legislative history supports our view.
As adopted in 1971, the request for assistance statute, N.J.S.A. 40A:14-156, was not limited to a contiguous municipality. See L. 1971, c. 197, § 1. However, by L. 1972, c. 4, § 2, the statute was amended to so provide, and remained that way when N.J.S.A. 40A:14-156.1 was adopted in 1976. See L. 1976, c. 45, § 1. The statement of the Senate County and Municipal Government Committee which accompanied Committee amendments to the bill (S1036), of which N.J.S.A. 40A:14-156.1 was a part, includes the following:
Senate Bill 1036 is directed toward remedying two sets of problems. First, as a result of the amendments to N.J.S. 40A:14-156 made by P.L. 1972, c. 4, that section of law, concerning mutual police assistance between contiguous municipalities, has been construed in some quarters as depriving municipalities of the authority to directly request assistance from noncontiguous municipalities for police or fire emergencies. Moreover, the ascribed legislative intent of P.L. 1972, c. 4 is viewed, insofar as emergency police assistance is concerned, as delimiting the authority of municipalities under the Interlocal Services Act (P.L. 1973, c. 208; C. 40:8A-1 et seq.). This lack of clear statutory authority, in turn, raises questions as to the *385 powers, immunities, benefits and compensation of members of a polic[e] force of a noncontiguous municipality when rendering such assistance.
....
When Senate Bill No. 1036 allows any municipality in the State to enter into agreements with any one or more other municipalities in the State for the rendering of mutual police assistance in emergencies, the bill's immediate objective is to deal with the problems of noncontiguous municipalities. In so doing, the bill also limits the authority of county disaster control coordinators to suspend the operations of mutual assistance agreements between noncontiguous municipalities.
The Legislature therefore understood that an ordinance was required to implement mutual aid assistance in non-contiguous municipalities.
N.J.S.A. 40A:14-156 was subsequently amended by L. 1977, c. 400, § 2, to include fire departments and first aid squads, and to extend the officer's rights, immunities and authority while rendering assistance outside the employing municipality. While the 1977 Act deleted the 1972 reference to contiguous municipalities in the amended first paragraph of N.J.S.A. 40A:14-156, quoted above, so as to permit emergency assistance from any municipality, it added a reference, as underscored by us, requiring assistance, "to the extent possible," "in the case of a contiguous municipality." Hence, the Legislature continued an existing distinction between emergent situations involving contiguous and non-contiguous municipalities.
Here, a mutual aid agreement did exist, although without the formality of adoption by ordinance. There is no dispute in the record that the municipalities were contiguous or that Beck, as a Township police officer, was requested by Borough authorities to respond to the need for police assistance in the Borough. Beck did not intrude into Washington Borough territory without request from Borough police authorities; he was dispatched to the contiguous municipality at the request of its police department and in the absence of adequate coverage within the Borough at the time.
The fact that the ordinances were not then in effect is not, therefore, controlling. We recognize that, in their absence, there may be no additional benefits or protection for an officer aside *386 from what the employing municipality may provide and that the employing municipality may receive no reimbursement for related expenses except to the extent required by N.J.S.A. 40A:14-156. See also N.J.S.A. 40:8A-1 to -7; N.J.S.A. 40A:14-152.2, -156.2. However, we do not believe that the authorization for the ordinances, as provided by N.J.S.A. 40A:14-156.1, was intended by the Legislature to prohibit such mutual assistance in the absence of an ordinance with respect to contiguous municipalities. The Legislature did not intend to require small municipalities, in the absence of a formal mutual aid ordinance, to expend the funds necessary to have extra police officers standing by to act in cases like this where no other officer is available. Moreover, we reject the suggestion that the Legislature contemplated formal declarations of emergency to implement N.J.S.A. 40A:14-156. Such a requirement would be impractical in emergent circumstances.
In our view, N.J.S.A. 40A:14-156 merely requires that "the chief or other head of any municipal police department and force" contact "the chief or other head of the police department and force of any other municipality." The request can be of a routine or continuous nature. There existed a long-standing mutual aid policy between Washington Township and Washington Borough at the time of Beck's dispatch. The Chief of the Washington Borough Police testified at the suppression hearing that he had made the request for assistance from the Township as a continuing practice because both departments were small and relied on the other. The concept was well-recognized by the Legislature with respect to contiguous municipalities, and we cannot conclude that the Legislature intended to void a constitutional search and seizure merely because the mutual aid practice was not at the time formally adopted by one or both of the municipalities.
N.J.S.A. 40A:14-156.1 supplies details which agreements between municipalities "may provide for" when there is a mutual aid policy. These agreements, however, do not create the extra-territorial jurisdiction which N.J.S.A. 40A:14-156 itself conveys with respect to contiguous municipalities (and conveyed even *387 before the adoption of N.J.S.A. 40A:14-156.1). Thus, mutual aid ordinances under N.J.S.A. 40A:14-156.1 are not prerequisites to the exercise of police powers across the boundaries of contiguous municipalities where both municipalities have a recognized and ongoing mutual aid relationship.
The order of suppression is reversed, and the matter is remanded for further proceedings consistent with this opinion.
NOTES
[1] We have been advised that Stacie Scott has died during the pendency of this appeal.
[2] That determination is not challenged by motion for leave to cross-appeal, or otherwise. To the contrary, only defendant Jorge Montalvo has filed a responding brief on this appeal. Defendant Mark Van Riper relies thereon. Montalvo argues only that "[b]ecause Washington Township Patrolman Beck lacked authority to search defendants' vehicle in Washington Borough, his search of the vehicle was unlawful." Montalvo and defendant Dennis Van Riper also rely on their trial briefs. Montalvo's trial brief was addressed to the jurisdictional issue. Van Riper's trial brief relied on Montalvo's trial brief.