**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2841-22

STATE OF NEW JERSEY,

      Plaintiff-Respondent/
      Cross-Appellant,

v.

TRAVIS M. FLOOD, a/k/a
TRAVIS FLOOD,

      Defendant-Appellant/
      Cross-Respondent.

_____

Argued April 24, 2024 – Decided May 16, 2024

Before Judges Currier, Susswein and Vanek.

On appeal from the Superior Court of New Jersey, Law Division, Middlesex County, Indictment No. 18-11-1521.

John P. Flynn, Assistant Deputy Public Defender, argued the cause for appellant/cross-respondent (Jennifer Nicole Sellitti, attorney; John P. Flynn, of counsel and on the briefs).

David Michael Liston, Assistant Prosecutor, argued the cause for respondent/cross-appellant (Yolanda

Ciccone, Middlesex County Prosecutor, attorney; David Michael Liston, of counsel and on the briefs).

PER CURIAM

This appeal arises from defendant Travis M. Flood's guilty plea conviction for second-degree possession of a controlled dangerous substance (CDS) with intent to distribute. The State initiated the appeal, challenging 527 days of the aggregate 1,714 days the sentencing judge awarded as jail/gap time credit. Defendant cross-appealed, challenging the denial of his motion to suppress evidence on the grounds that his arrest and the impoundment of his SUV was made by law enforcement officers operating outside their county/municipal jurisdiction. In the alternative, defendant asks us to remand the case for an evidentiary hearing on his motion to suppress. Defendant also contends the sentencing judge erred by inadequately articulating his findings as to aggravating and mitigating factors, and by improperly considering an overdose death for which defendant was acquitted.

After carefully reviewing the record in light of the governing legal principles and arguments of the parties, we affirm the denial of defendant's suppression motion. We likewise are unpersuaded by defendant's contention the trial judge erred in its analysis of the relevant sentencing factors. However, we conclude the sentencing judge improperly awarded 527 days of jail credit as

predicated on the judge's decision to order the present sentence to run concurrently with a previously imposed sentence that had expired. We remand not only for the sentencing judge to correct the number of days of credit but to also reconsider the overall sentence and parole ineligibility term in light of the revised "real time" defendant will serve pursuant to N.J.S.A. 2C:44-1(c)(2).

I.

We discern the following pertinent facts and procedural history from the record. On August 22, 2018, at approximately 3:00 a.m., Old Bridge police officers responded to a 9-1-1 call made by Jasvir Singh at his apartment in Parlin. When the officers arrived, they found six men lying on the floor exhibiting signs of drug overdose. Narcan was administered to all six, but only five regained consciousness. The sixth victim, K.J.,[1] was pronounced dead at the scene.

The surviving overdose victims were taken to the hospital, where they were interviewed by the police. They stated they attended a wedding the previous night and went to the apartment around 1:40 a.m. to continue drinking.

---

[1] The parties and the trial court refer to the deceased as "K.J." and "J.K." We use "K.J." as stated in the indictment.

A-2841-22

Iqbal Singh[2] called an individual he knew as "Kevin D" and arranged to buy $200 worth of cocaine at a motel in Sayreville. Iqbal had purchased cocaine from "Kevin D" on two prior occasions. Iqbal provided police with the two telephone numbers he used to contact "Kevin D." A database search revealed that one of the two phone numbers was associated with defendant.

Detective Joseph Celentano of the Middlesex County Prosecutor's Office was designated as the lead detective for the investigation along with Detective Aaron Matikonis from the Old Bridge Police Department. The investigation was described as "a joint effort with law enforcement officials from the Old Bridge Police Department, Sayreville Police Department, Woodbridge Police Department, West Windsor Police Department[3] and the Middlesex County Narcotics Task Force."

Iqbal continued to cooperate with the investigation. On the afternoon of August 23, 2018, under Celentano's supervision, Iqbal arranged through telephonic and text communications to purchase cocaine from "Kevin D." The purchase was scheduled to occur that evening at a hotel in Princeton. At

---

[2] We hereafter refer to Iqbal by his first name to avoid confusion because two witnesses share the same last name. We mean no disrespect in doing so.

[3] West Windsor is located in Mercer County.

approximately 5:12 p.m., Iqbal was shown a photo array and positively identified defendant as the individual who sold him cocaine the night before.

At approximately 5:15 p.m., police established surveillance at the hotel. The surveillance team included Detectives Daniel Gzemski and Stenly Vertus of the Middlesex County Prosecutor's Office Narcotics Task Force. Celentano relayed communications between Iqbal and defendant "to the arrest teams via radio to coordinate" defendant's impending arrest.

At approximately 6:18 p.m., the officers on the scene observed defendant enter the hotel parking lot in a black Dodge Charger. Defendant circled the lot before parking. Officers approached the parked vehicle and placed defendant under arrest. A search of defendant's person failed to reveal any contraband.

A police canine examination of the exterior of defendant's vehicle produced a "positive indication for the presence of narcotics and/or contraband at various locations throughout the vehicle." Defendant's car was towed to the Old Bridge Police Department pending the issuance of a search warrant. Later that evening, a Superior Court judge approved a telephonic warrant authorizing the search of defendant's vehicle. That search revealed, among other evidence, a quantity of cocaine well in excess of half an ounce.

In November 2018, a Middlesex grand jury returned Indictment No. 18-11-1521, charging defendant with: third-degree distribution of cocaine in Middlesex County on August 22, 2018, N.J.S.A. 2C:35-5(a)(1) and (b)(3) (count one); third-degree distribution of fentanyl in Middlesex County on August 22, 2018, N.J.S.A. 2C:35-5(a)(1) and (b)(5) (count two); first-degree strict liability for drug-induced death by distributing "[c]ocaine and/or [f]entanyl" in Middlesex County on August 22, 2018, N.J.S.A. 2C:35-9 (count three); second-degree possession of cocaine with intent to distribute in Mercer County on August 23, 2018, N.J.S.A. 2C:35-5(a)(1) and (b)(2) (count four); and second-degree possession of methamphetamine with intent to distribute in Mercer County on August 23, 2018, N.J.S.A. 2C:35-5(a)(1) and (b)(9)(a) (count five).

On November 12, 2019, defendant pled guilty under a separate Burlington County Indictment to second-degree possession of heroin with intent to distribute, N.J.S.A. 2C:35-5(a)(1), and third-degree possession of fentanyl, N.J.S.A. 2C:35-10(a)(1). On January 31, 2020, defendant was sentenced on the two counts of the Burlington County indictment to two five-year prison terms, which were ordered to run concurrent to each other and "to any sentence out of Middlesex County."

6

On January 14, 2021, defendant pled guilty under Middlesex County Indictment No. 18-08-1126 to fourth-degree unlawful taking of means of conveyance, N.J.S.A. 2C:20-10(b).  The judge who accepted the car-theft guilty plea—who we refer to as the motion judge—also heard argument on three motions by defendant under Middlesex County Indictment No. 18-11-1521: a motion to dismiss the indictment, a motion to sever counts of the indictment, and a motion to suppress evidence.  The motion judge denied the motions to dismiss the indictment and suppress evidence, but granted defendant's motion to sever counts four and five from counts one through three.

On April 29, 2021, in accordance with a negotiated plea agreement, another judge—who we refer to as the sentencing judge—sentenced defendant on Middlesex County Indictment No. 18-08-1126 to time served.  On June 17, 2021, the sentencing judge heard and denied motions for reconsideration of the indictment-dismissal, severance, and suppression issues related to Middlesex County Indictment No. 18-11-1521.

On June 24, 2021, the State filed a motion for leave to appeal the severance of counts four and five which we granted on July 26, 2021.  On February 25, 2022—while the State's interlocutory appeal was pending—

7

defendant completed his Burlington County sentence and was later transferred to the Middlesex County jail pursuant to the pretrial detention order.

On April 21, 2022, we affirmed the motion judge's severance order. The sentencing judge then entered orders classifying the ten months during which the State's interlocutory appeal was pending as excludable time under the Criminal Justice Reform Act, N.J.S.A. 2A:162- 22(a)(2)(a).

In September 2022 defendant was tried on counts one through three of Middlesex County Indictment No. 18-11-1521. He was acquitted of those charges, including the strict liability for drug-induced death count. On September 21, 2022, defendant appeared before the sentencing judge and pled guilty to count four of Middlesex County Indictment No. 18-11-1521. In exchange for defendant's guilty plea to that second-degree crime—the conviction now before us—the State agreed to dismiss count five of the indictment and to recommend a sentence of eight years imprisonment with four years of parole ineligibility. The plea agreement was silent as to concurrent or consecutive sentences or jail credits.

At the May 2, 2023 sentencing hearing, the parties agreed the presentence report should be amended to reflect that defendant was entitled to 756 days of gap time credits—not 1,142 days. They also agreed defendant was entitled to

431 days of jail credits for the period from February 25, 2022 to May 1, 2022—the period between defendant's completion of the Burlington County sentence and the day before defendant's sentencing in the present matter. The parties disputed whether defendant was entitled to 527 days of jail credits for the period from August 23, 2018 (defendant's arrest for the present charges) and January 30, 2020 (the day before defendant's sentencing on the Burlington County indictment).

Defendant was sentenced in accordance with the plea agreement to an eight-year prison term with a four-year period of parole ineligibility. The judgment of conviction (JOC) reflects that defendant was awarded 958 days of jail time credit and 756 days of gap time credit.

The State filed a notice of appeal, challenging 527 days of the total jail credits awarded. Defendant thereafter filed a notice of cross-appeal, challenging the suppression ruling and his sentence. This appeal follows.

Defendant raises the following contentions for our consideration on appeal:

> POINT I
>
> THE CONTRABAND SHOULD BE SUPPRESSED BECAUSE THE POLICE OFFICERS FROM MIDDLESEX COUNTY LACKED AUTHORITY TO

ARREST [DEFENDANT] AND IMPOUND HIS CAR IN MERCER COUNTY.

POINT II

ALTERNATIVELY, THE MATTER SHOULD BE REMANDED FOR AN EVIDENTIARY HEARING TO RESOLVE MATERIAL FACTUAL DISPUTES ON THE MOTION TO SUPPRESS.

POINT III

THE MATTER SHOULD BE REMANDED FOR RESENTENCING BECAUSE THE TRIAL COURT IMPERMISSBLY RELIED ON ACQUITTED CONDUCT TO SUPPORT AGGRAVATING FACTORS.

The State raises the following contentions in its appeal:

POINT I

THE OFFICERS WHO ARRESTED DEFENDANT AND SEIZED HIS CAR HAD AUTHORITY TO DO SO.

POINT II

NO EVIDENTIARY HEARING IS REQUIRED ON DEFENDANT'S MOTION TO SUPPRESS EVIDENCE BECAUSE NO MATERIAL FACTS ARE DISPUTED.

POINT III

THIS MATTER SHOULD BE REMANDED FOR RESENTENCING, BUT ONLY TO CORRECT

10                                          A-2841-22

DEFENDANT'S ILLEGAL AWARD OF JAIL CREDIT.

Defendant raises the following additional contentions in responding to the State's appeal:

POINT I

[DEFENDANT] IS ENTITLED TO THE CONTESTED JAIL CREDITS UNDER A STRAIGHTFORWARD APPLICATION OF RULE 3:21-8 AND FUNDAMENTAL FAIRNESS.

POINT II

IF THIS COURT REVERSES THE AWARD OF THE CONTESTED JAIL CREDITS, THEN THE MATTER MUST BE REMANDED FOR RESENTENCING SO THE TRIAL COURT CAN ASSESS THE REAL TIME THAT [DEFENDANT] WILL SERVE.

POINT III

THIS COURT SHOULD EITHER ADDRESS THE SUPPRESSION ISSUE OR REMAND THE MATTER TO THE TRIAL COURT TO CONSIDER THIS ISSUE.

The State raises the following contention it its reply brief:

POINT I

THE AWARD OF JAIL CREDIT HERE WAS NOT JUSTIFIED UNDER RULE 3:21-8 OR THE DOCTRINE OF FUNDAMENTAL FAIRNESS.

11

II.

We begin by addressing defendant's challenge to the denial of his suppression motion. The scope of our review of a decision on a motion to suppress is limited. State v. Ahmad, 246 N.J. 592, 609 (2021). "Generally, on appellate review, a trial court's factual findings in support of granting or denying a motion to suppress must be upheld when 'those findings are supported by sufficient credible evidence in the record.'" State v. A.M., 237 N.J. 384, 395 (2019) (quoting State v. S.S., 229 N.J. 360, 374 (2017)). An appellate court gives deference to those factual findings in recognition of the trial court's "opportunity to hear and see the witnesses and to have the 'feel' of the case, which a reviewing court cannot enjoy." State v. Elders, 192 N.J. 224, 244 (2007). We "ordinarily will not disturb the trial court's factual findings unless they are 'so clearly mistaken that the interests of justice demand intervention and correction.'" State v. Goldsmith, 251 N.J. 384, 398 (2022) (quoting State v. Gamble, 218 N.J. 412, 425 (2014)). However, legal conclusions drawn from those facts are reviewed de novo. State v. Radel, 249 N.J. 469, 493 (2022).

Defendant argues the officers who arrested him—from the Middlesex County Prosecutor's Office and the Sayreville and Woodbridge Police Departments—did not have the statutory authority to detain him or to seize and

impound his car in Mercer County. The State urges us to disregard this argument, asserting it was not adequately raised to the motion judge and positing "[n]either the State nor the trial could have known, based on defendant's vague claim of a territorial-jurisdiction violation, that he was challenging the jurisdiction of the investigating officers."[4]

As we recently emphasized in State v. Carrillo, 469 N.J. Super. 318 (App. Div. 2021), "[p]arties must make known their positions at the suppression hearing so that the trial court can rule on the issues before it." Id. at 337. "When a defendant holds an issue for appeal, he or she deprives the State of the opportunity to marshal evidence to meet it." Ibid. We nonetheless choose to consider defendant's extra-jurisdictional arrest/search argument on its merits, since the evidence in the record allows us to decide the legal issue defendant raises on appeal.

"The jurisdiction of officers of New Jersey municipal police departments is generally limited to 'within the territorial limits' of their municipalities." State v. Kueny, 411 N.J. Super. 392, 406 (App. Div. 2010); N.J.S.A. 40A:14-152

---

[4] Defendant maintains this argument was "partially raised below." The record shows that in a pro se brief submitted to the motion judge, defendant raised issues of "territorial jurisdiction" and "extraterritorial jurisdiction." The motion judge acknowledged it read and considered defendant's pro se submission.

("The members and officers of a police department and force, within the territorial limits of the municipality, shall have all the powers of peace officers and upon view may apprehend and arrest any disorderly person or any person committing a breach of the peace."). "An exception to this rule is that a municipal police officer has 'full power to arrest for any crime committed in said officer's presence and committed anywhere within the territorial limits of the State of New Jersey.'" Ibid. (quoting N.J.S.A. 40A:14-152.1); see N.J.S.A. 2A:157-2.1 (providing county detectives, sheriff officers and investigator sheriff's offices the same authority).

In State v. Montalvo, we held it is "clear that the Legislature contemplated that police officers would often have to act beyond their traditional jurisdiction." 280 N.J. Super. 377, 381 (App. Div. 1995). Similarly, in State v. White, we stated, "[o]ur reading of the relevant statutes satisfies us that the Legislature contemplated that police officers may at times be called upon to go beyond the boundaries of their municipality in the performance of their official duties." 305 N.J. Super. 322, 327 (App. Div. 1997). In State v. Gadsden, we held a violation of the statutes addressing jurisdiction of municipal police was a "procedural or technical" defect, not an infringement of a constitutional right warranting suppression of evidence. 303 N.J. Super. 491, 503 (App. Div. 1997).

Applying these principles, we are satisfied defendant's arrest was lawful,[5] as was the warrant search of his impounded vehicle.[6] Defendant was arrested in a hotel parking lot in Princeton in Mercer County for alleged criminal conduct that occurred in New Jersey. See N.J.S.A. 2C:1-3(a)(1). The joint investigation was led by Middlesex County Detective Celentano and involved the Old Bridge and West Windsor Police Departments. West Windsor is in Mercer County and abuts Princeton. See Montalvo, 280 N.J. Super. at 379 (recognizing the neighboring municipalities' "long-standing practice of covering for each other when necessary to perform police duties").

Defendant asks us to part company with Gadsden and White, arguing their reasoning "improperly diminishes the significance of the officers' flagrant failure to comply with the limits of their statutory jurisdiction." Defendant argues, "[a]llowing police officers to exceed their statutory jurisdiction without consequence would erode . . . important societal interests," including deterring police misconduct.

---

[5] We note that there were no fruits of the warrantless arrest to suppress; the search of defendant's person incident to arrest in the hotel parking lot arrest did not reveal any contraband or weapons.

[6] We note that while the vehicle was towed from the hotel parking lot in Princeton, Mercer County, it was impounded and eventually searched at the Old Bridge Police Department in Middlesex County pursuant to a warrant.

A-2841-22

We disagree. Our Legislature knows how to establish an exclusionary remedy when police violate a statute, see N.J.S.A. 2A:156A-21 (requiring suppression when police violate the Wiretap Act), but did not legislatively mandate suppression of evidence seized by police acting beyond their statutorily-prescribed geographic jurisdiction. Furthermore, to the extent planned extra-jurisdictional enforcement activity raises "deconfliction" concerns, that is a matter to be addressed by the county prosecutors as the chief law enforcement officers in their respective jurisdictions, and by the Attorney General in his capacity as the State's chief law enforcement officer responsible for overseeing and coordinating the activities of all state, county, and local law enforcement agencies. See N.J.S.A. 52:17B-97 to -117. See also Off. of the Att'y Gen., Law Enf't Directive No. 2016-1, Automated Deconfliction of Planned Law Enforcement Operations and Investigations (Feb. 17, 2016), and White, 305 N.J. Super. at 333 n.4 ("[I]t would appear to be advisable police procedure for investigating officers of another jurisdiction to be accompanied by a representative of the police department in the jurisdiction of the person sought to be investigated.").

Here, the investigation leading to defendant's arrest and the discovery of CDS in his vehicle was a joint effort among several law enforcement agencies

and under the auspices of a county prosecutor. We are reluctant to condemn such collaborative law enforcement efforts and see no harm to deter by invocation of the exclusionary rule. See State v. Badessa, 185 N.J. 303, 310 (2005) ("The primary purpose of the exclusionary rule 'is to deter future unlawful police conduct.'").

## III.

We likewise reject defendant's request for a remand for an evidentiary hearing. As we recently explained in State v. Jones, 475 N.J. Super. 520 (App. Div. 2023), an evidentiary suppression hearing is required only if material facts are disputed. Id. at 528. "To establish a dispute as to material facts, 'a defendant must do more than allege baldly that the search warrant was unlawful.'" Ibid. (quoting Carrillo, 469 N.J. at 332). "'Factual allegations which are general and conclusory or based on suspicion and conjecture do not suffice' to establish a dispute of material facts warranting a [evidentiary] hearing." Ibid. (quoting State v. Hewins, 166 N.J. Super. 210, 215 (Law Div. 1979)). Here, applying a de novo standard of review, ibid., we conclude the dispute was not over particular facts, but rather over whether those facts add up to probable cause—a legal determination. Cf. State v. Green, 346 N.J. Super. 87, 90-91 (App. Div. 2001) (when the State alleges facts that support the legitimacy of the search, and

the defendant does not challenge those facts, the suppression motion can be decided without an evidentiary hearing).

We agree with the judge that police had "ample probable cause to stop the vehicle, detain the defendant, and use the K-9 to sniff for the presence of CDS." The judge noted the probable cause was based on "the statement of [Iqbal], who bought drugs from the defendant and identified him. There was a [consensual intercept of communications] where defendant says to meet at a certain location for the purpose of selling drugs. Defendant shows up to that location and in an abundance of caution, a drug sniff dog is used and a search warrant procured."

We reject defendant's contention he was "entitled to an evidentiary hearing during which he could cross-examine an officer about the circumstances of [Iqbal's] identification, which bore directly on the contested issue of probable cause." Defendant claims that Iqbal's identification was "unreliable" because he was drunk when he bought the drugs the night of the wedding and "was in the hospital recovering from an overdose during the [photo] array procedure."

We are not persuaded. As the State aptly notes, defendant did not move for a pretrial hearing to challenge or suppress Iqbal's out-of-court identification pursuant to United States v. Wade, 388 U.S. 218 (1967), and State v. Henderson, 208 N.J. 208 (2011). Cf. State v. Guerino, 464 N.J. Super. 589, 604 (App. Div.

2020) (describing the "four-step analysis for courts to apply in deciding whether to grant an evidentiary hearing and, if a hearing is warranted, whether to admit or suppress an out-of-court identification at trial").  In these circumstances, we deem it entirely appropriate for the judge to consider Iqbal's identification of defendant as part of the totality of circumstances establishing probable cause.  See State v. Basil, 202 N.J. 570, 585-86 (2010).  But even assuming for the sake of argument Iqbal's identification should not have been accredited as part of the probable cause determination, the remaining facts amply support probable cause to search defendant's vehicle.

We add, finally, that search warrants are presumptively valid, State v. Sullivan, 169 N.J. 204, 217 (2001), and when reviewing a search warrant, courts must accord substantial deference to the discretionary determination resulting in the issuance of a warrant.  Id. at 211.  In sum, defendant's suppression motion was properly denied.

## IV.

We turn next to defendant's sentencing contentions.  We begin by acknowledging the legal standard governing this part of the appeal.  "Appellate courts review sentencing determinations in accordance with a deferential standard."  State v. Fuentes, 217 N.J. 57, 70 (2014).  The reviewing court must

not substitute its judgment for that of the sentencing court.  State v. O'Donnell, 117 N.J. 210, 215 (1989).  Accordingly, the sentence must be affirmed unless:

> (1) the sentencing guidelines were violated; (2) the aggravating and mitigating factors found by the sentencing court were not based upon competent and credible evidence in the record; or (3) "the application of the guidelines to the facts of [the] case makes the sentence clearly unreasonable so as to shock the judicial conscience."
>
> [Fuentes, 217 N.J. at 70 (quoting State v. Roth, 95 N.J. 334, 364-65 (1984)).]

Stated another way, we may modify a defendant's sentence only when convinced that the sentencing judge was clearly mistaken.  State v. Johnson, 118 N.J. 10, 15 (1990); State v. Jabbour, 118 N.J. 1, 6 (1990).

That said, it is also well-established the consideration of aggravating and mitigating factors must be part of the deliberative process.  State v. Dalziel, 182 N.J. 494, 505 (2005); State v. Cassady, 198 N.J. 165, 180 (2009).  Trial courts must "explain and make a thorough record of their findings to ensure fairness and facilitate review."  State v. Comer, 249 N.J. 359, 404 (2022).  "Proper sentencing thus requires an explicit and full statement of aggravating and mitigating factors and how they are weighed and balanced."  State v. McFarlane, 224 N.J. 458, 466 (2016) (quoting State v. Randolph, 210 N.J. 330, 348 (2012)).  See also State v. Case, 220 N.J. 49, 66 (2014) ("[C]ritical to the sentencing

A-2841-22

process and appellate review is the need for the sentencing court to explain clearly why an aggravating or mitigating factor presented by the parties was found or rejected and how the factors were balanced to arrive at the sentence.") (citing Fuentes, 217 N.J. at 73).

When the trial court fails to provide a qualitative analysis of the relevant sentencing factors on the record, an appellate court may remand for resentencing. State v. Kruse, 105 N.J. 354, 363 (1987). An appellate court may also remand for resentencing if the trial court considers an aggravating factor that is inappropriate to a particular defendant or to the offense at issue. State v. Pineda, 119 N.J. 621, 628 (1990).

Notably, here, the trial judge sentenced defendant in accordance with his plea agreement—eight years imprisonment with four years of parole ineligibility. See Fuentes, 217 N.J. at 70 ("A sentence imposed pursuant to a plea agreement is presumed to be reasonable."). And despite defendant's claims to the contrary, the trial judge did detail defendant's criminal record and acknowledged his substance abuse history. Specifically, the sentencing judge found:

> The instant offense represents the defendant's [tenth] Superior Court conviction. And he has numerous drug offenses. He has basically run the gamut when it comes to prior possession, possession with intent, distribution.

He has two local ordinance violations for consumption of alcoholic beverages in public places and noise, he has three municipal court convictions, resisting arrest, wandering, he also has an out-of-state, Pennsylvania, convictions in the [c]ourt of [c]ommon [p]leas. He also has one juvenile [ad]judication.

The defendant reports being in good physical and mental health. As far as substance abuse, he reports alcohol, marijuana, [p]ercocet, cocaine, and [e]cstasy. But that all last—when he was arrested back in August of 2018. He is currently incarcerated. The defendant is single and has four children. The defendant reportedly earned his GED in 2002.

Relying on these facts, the sentencing judge found three aggravating factors and no mitigating factors:

In weighing the aggravating versus the mitigating factors I find the following aggravating factors apply: three, the risk the defendant will commit another offense [N.J.S.A. 2C:44-1(a)(3)]; six, the extent of the defendant's prior criminal history [N.J.S.A. 2C:44-1(a)(6)], which I give great weight to; and nine, the need for deterring the defendant and others from violating the law [N.J.S.A. 2C:44-1(a)(9)]. That's both general and specific deterrence, and that is from the past history of this case. There are no mitigating factors. The aggravating factors substantially outweigh the mitigating factors.

We are satisfied the pertinent facts fully support the three aggravating factors found by the sentencing judge. See Dalziel, 182 N.J. at 505. Further, defense counsel did not argue any mitigating factors at sentencing. See Case,

220 N.J. at 66. Thus, the sentencing judge's analysis and defendant's sentence are supported by the credible evidence in the record. See Fuentes, 217 N.J. at 70.

Defendant also argues the sentencing judge "impermissibly relied on the facts of the overdose death, for which [defendant] was acquitted of all charges, in finding a need for both general and specific deterrence to support aggravating factor nine." As our Supreme Court recently emphasized in State v. Melvin, "fundamental fairness prohibits courts from subjecting a defendant to enhanced sentencing for conduct as to which a jury found that defendant not guilty." 248 N.J. 321, 326 (2021). The record shows that while the sentencing judge mentioned the overdose death in recounting the events leading to defendant's arrest—as did we in our recitation of facts and procedural history—we are not persuaded he treated the drug-induced death as an aggravating factor—either the "nature and circumstances of the offense," N.J.S.A. 2C:44-1(a)(1), or the "gravity and seriousness of harm inflicted on the victim," N.J.S.A. 2C:44-1(a)(2) —in  violation of the rule stressed in Melvin.

Specifically, the sentencing judge stated:

> On August 22, 2018, the Old Bridge [p]olice were dispatched to a residence . . . in reference to a first aid call. Dispatch advised there were multiple males unconscious but breathing. Upon arrival, officers

observed one male, [K.J.], face down on the floor. He did not appear to be breathing, was later pronounced dead at the scene. Police looked around the room and could see the remainder of the individuals in various positions on the floor and the remainder appeared to be breathing.

Detectives attempted to speak with all five of the individuals who overdosed. When asked who supplied the drugs or where they came from, [Iqbal] showed the detective the numbers of Kevin D. and said Kevin D. sold the drugs to him. Detectives then spoke with [Iqbal] who said he purchased the cocaine from a guy in the Gallery Motel in Parlin, New Jersey. A check of the clear database search of the Kevin D. phone number came back to Travis Flood of Trenton, New Jersey. Subsequently, [Iqbal] agreed to assist in the investigation by contacting Kevin D., known as Travis Floo[d], and arrange a drug buy.

On August 22, 2018, a buy was planned to occur with Kevin D. and [Iqbal] for a purchase. On August 23, 2018, a buy was arranged at the Clarion Palmer Hotel in Princeton. Travis Flood, the defendant, entered the hotel in a black Dodge Charger. After he parked detectives approached and placed him under arrest. Flood was searched and found to be clear of any contraband. The Middlesex County Prosecutor's Office obtained a telephonic search warrant for the Dodge. During a search of the Dodge, multiple clear plastic bags of a white powdery substance were located under the steering column.

We add that the judge stated, "[t]hat's both general and specific deterrence, and that is from the past history of this case." (Emphasis added). We acknowledge the judge's reference to the past history "of this case," as distinct

from the <u>defendant's</u> past history, could be construed to incorporate the overdose death. We do not draw that conclusion because the judge at no time expressed an opinion as to defendant's responsibility for the death. We reiterate the reference to K.J.'s death was part of the recitation of facts, not an analysis of statutory aggravating factors. Notably, the judge did not find aggravating factor one ("nature and circumstances of the offense") or two ("gravity and seriousness of harm inflicted on the victim"), which one would expect if the judge had held defendant culpable for the overdose death. In these circumstances, we do not consider what appears to be nothing more than a slip of the tongue to constitute a sentencing determination that is "clearly mistaken." <u>See</u> <u>Jabbour</u>, 118 N.J. at 6. However, because we are constrained to remand the case for reconsideration of sentencing on other grounds, <u>see</u> section V, <u>infra</u>, we expect the judge to clarify that K.J.'s death plays no role in the appropriate sentence imposed on defendant's conviction for possession of CDS with intent to distribute.

V.

Finally, we address the State's contention the sentencing judge improperly awarded 958 days of jail credit when defendant was only entitled to 431 days of credit. At issue are 527 days awarded to defendant for the period between August 23, 2018—the day defendant was arrested for the charges in Middlesex County

Indictment No. 18-11-1521—and January 30, 2020—the day before defendant was sentenced on Burlington County Indictment No. 18-11-1572. To justify awarding the 527 days of jail credit, and to avoid double-counting these days, the judge ran defendant's sentence for Middlesex County Indictment No. 18-11-1521 concurrent with his sentence on Burlington County Indictment No. 18-11-1572, notwithstanding that defendant had completed his Burlington sentence more than a year earlier. The issue before us is whether that jail credit award was unlawful, as the State contends.

Rule 3:21-8 provides that a "defendant shall receive credit on the term of a custodial sentence for any time served in custody in jail or in a state hospital between arrest and the imposition of sentence." That credit for pre-sentence custody is commonly called "jail credits," which are "credit[ed] against the sentence for every day [the] defendant was held in custody for that offense prior to sentencing." State v. Hernandez, 208 N.J. 24, 37 (2011). As explained in Hernandez, jail credits reduce a defendant's overall sentence and any term of parole ineligibility. Ibid. See also State v. Rippy, 431 N.J. Super. 338, 347 (App. Div. 2013).

In State v. C.H., 288 N.J. 111, 123 (2017), our Supreme Court modified Hernandez to make clear "double credit should not be awarded where a defendant is sentenced to consecutive sentences under separate indictments and receives the

optimal benefits of jail credit for time spent in pre-sentence custody." The sentencing judge "should treat the sentences as a unified proceeding and maximize the benefits to the defendant by applying jail credit to the front end of the imprisonment term." Ibid. "To hold otherwise would lead to the perverse result that a defendant held in custody would be better off than one released on bail or supervision." Id. at 121.

When Rule 3:21-8 applies, the award of jail credits is "mandatory, not discretionary." Hernandez, 208 N.J. at 37. In contrast, trial judges have discretion to determine if a sentence should be concurrent or consecutive, State v. Cuff, 239 N.J. 321, 350 (2019), subject to an important caveat. As we explained in State v. Mercadante, trial courts do not have the authority "to run a sentence concurrent to a prior expired sentence." 299 N.J. Super. 522, 532 (App. Div. 1997). In Mercadante, we held the sentencing judge exceeded his authority in running the defendant's New Jersey sentence concurrent with his expired federal sentence. Ibid. We reasoned, "[w]hile a New Jersey sentence can be run concurrent to a federal sentence, here there was no longer any federal sentence to run concurrent with because it had fully expired prior to defendant's initial sentencing on the New Jersey charge." Ibid.

Defendant acknowledges that under the rule announced in Mercadante, "the trial court did not have discretion to run the present sentence concurrently

to the fully completed Burlington County sentence." However, defendant argues he is still "entitled to the contested jail credits under a straightforward application of Rule 3:21-8," Hernandez, and the doctrine of fundamental fairness. Defendant contends the award of the contested jail credits is consistent with Hernandez's policy goals. Otherwise, defendant argues, he would be "arbitrarily deprive[d]" of jail credits based on "the protracted procedural history of this case, which he had no control over." Defendant further argues "it was clearly foreseeable" that he would not be tried on the present indictment before the Burlington County sentence expired because the State sought leave to appeal the trial judge's severance ruling and obtained two thirty-day extensions of time to file its appellate brief over defendant's objection.

We are unpersuaded that defendant is entitled to the 527 contested days as credit toward his sentence on the Middlesex conviction now before us. Those days were credited to another sentence that fully expired. Awarding them after the Burlington sentence had been fully served constitutes a form of double-counting. Although we are reluctant to criticize the sentencing judge for trying to ensure the sentence defendant serves on the present offense is fair and just, it was beyond the realm of his sentencing discretion to run the present sentence concurrent to the expired Burlington sentence to justify awarding the extra jail

credits. Accordingly, we remand for the sentencing judge to amend the JOC to reduce the aggregate jail credit award by 527 days.

That does not end our discussion of jail credits. As defendant aptly notes, there is another avenue by which to ensure the overall fairness of the sentence, which is the gravamen of defendant's jail-credit argument. N.J.S.A. 2C:44-1(c)(2) provides, "[w]hen imposing a sentence of imprisonment the court shall consider the defendant's eligibility for release under the law governing parole, including time credits awarded pursuant to Title 30 of the Revised Statutes, in determining the appropriate term of imprisonment." This is sometimes referred to as a requirement to consider "real time," meaning the length of incarceration the defendant will actually serve before becoming eligible for parole, considering, for example, commutation (good time), work, and minimum custody status credits the defendant may earn while in the custody of the Department of Corrections. Any such consideration of real time would also account for jail credits awarded at the sentencing hearing.

We presume that in this case, the sentencing judge, in accordance with the mandate in N.J.S.A. 2C:44-1(c)(2), determined that the eight-year overall term with a four-year period of parole eligibility was fair accounting for the jail/gap time credits the judge awarded. See Hernandez, 208 N.J. at 37 (noting jail

credits reduce both the overall sentence and any term of parole ineligibility). Because we remand for the judge to eliminate 527 of those credits—a substantial fraction of the total credits awarded—we deem it necessary and appropriate to also remand for the judge to reconsider the overall sentence and parole ineligibility term to account for the reduced number of credits. See State v. Ramsey, 415 N.J. Super. 257, 272 (App. Div. 2010) ("[W]e remand for resentencing at which consideration of the period of parole ineligibility, or real time, should be considered in setting the specific term."). We note at oral argument before us, the State acknowledged a remand for reconsideration of sentence in view of N.J.S.A. 2C:44-1(c)(2) would be appropriate if we ruled the 527 days of jail credit was improperly awarded.

On remand, defendant is free, of course, to urge the sentencing judge to impose a revised sentence that results in roughly the same first parole eligibility date the judge deemed appropriate punishment at the initial sentencing hearing. We offer no opinion on whether to revise the sentence to achieve the same approximate parole eligibility date contemplated at the initial sentencing proceeding. We instead leave to the sentencing judge's sound discretion whether to impose a lesser overall sentence or a lesser term of parole ineligibility to account for the reduction in jail credits.

Affirmed in part and remanded in part.  We do not retain jurisdiction.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-2841-22